FILED
United States Court of Appeals
Tenth Circuit

January 25, 2008

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

# UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

UNITED STATES OF AMERICA;
INTERNAL REVENUE SERVICE,

      Petitioners-Appellees,

v.

H. CLARK FORD, III,

      Respondent-Appellant.

No. 07-2162

Appeal from the United States District Court
for the District of New Mexico
(D.C. No. MC-07-16-JH)

Submitted on the briefs:[*]

H. Clark Ford, III, Pro Se, for Respondent-Appellant.

Richard T. Morrison, Acting Assistant Attorney General (Thomas J. Clark and
Francesca U. Tamami with him on the briefs), Department of Justice, Tax
Division, Washington D.C., for the Petitioners-Appellees.

Before **BRISCOE**, **BALDOCK**, and **LUCERO**, Circuit Judges.

**LUCERO**, Circuit Judge.

---

    [*] At the parties' request, the case is unanimously ordered submitted without
oral argument pursuant to Fed. R. App. P. 34(f) and 10th Cir. R. 34.1(G).

H. Clark Ford, III, proceeding pro se, appeals from a district court's decision to hold him in civil contempt following his failure to comply with a court order enforcing two summonses issued by the Internal Revenue Service ("IRS"). Because Ford raises only frivolous arguments regarding why he should not comply with the district court's enforcement order, and because Ford may end his incarceration for contempt at any time by tendering compliance, we conclude that the district court did not abuse its discretion in holding Ford in civil contempt. Exercising jurisdiction under 28 U.S.C. § 1291, we **AFFIRM**.

**I**

Since 2001, if not earlier, Ford has failed to file traditional federal income tax returns with the IRS.[1] As a result of this failure, IRS Revenue Officer Michael Pryor issued two summonses to Ford in August 2006. Those summonses requested that Ford testify before the IRS and that he provide documentation related to his income for the years 2001 through 2005, as well as records relating to his assets and liabilities for the period August 1, 2005, through July 31, 2006. Raising several objections to the IRS's authority to make tax assessments against him and to issue the summonses, Ford refused to provide the IRS with the requested testimony and documentation.

---

[1] According to the IRS, Ford also has a delinquent federal tax liability going back to 1996.

Following Ford's refusal, the IRS referred the matter to the United States Attorney's Office, which also sought Ford's cooperation by a letter sent in February 2007. Ford again indicated that he would not comply with the summonses. As a result of this recalcitrance, the government instituted the current action against Ford in March 2007, petitioning the district court for an order requiring Ford's compliance with the summonses issued. See I.R.C. § 4602(b) (providing mechanism for IRS to enforce administrative summonses in district court); see generally United States v. Powell, 379 U.S. 48, 57-58 (1964) (discussing process for IRS to enforce administrative summonses); United States v. Balanced Fin. Mgmt., Inc., 769 F.2d 1440, 1443-45 (10th Cir. 1985) (same).

After a hearing on the government's petition and Ford's written response, the district court entered an order on April 23, 2007 ("April Order"), requiring Ford to appear before the IRS on May 2, 2007, and provide the testimony and documentation requested by the IRS in its two summonses. The court specifically warned Ford that his failure to comply with the order would result in further enforcement proceedings against him. Ford subsequently filed a motion for reconsideration of the court's enforcement decision, essentially restating the same arguments he had presented in his original answer to the government's petition and at the hearing before the district court. The district court denied the motion

on June 7, 2007, again concluding that Ford's arguments were without legal merit.[2]

On May 2, 2007, Ford appeared before the IRS in accordance with the district court's April Order. He did not, however, provide Pryor with any responsive testimony or documents. Ford instead chose to leave the meeting after Pryor informed him that he was free to do so if he was not going to answer Pryor's questions. Believing that Ford's actions at the May 2, 2007 meeting constituted noncompliance with the court's April Order, the government filed a second petition to enforce the original summonses. Unlike the first petition, however, this second petition asked the district court to hold Ford in civil contempt for his failure to comply with the court's earlier order. It also requested that Ford be arrested and held in federal custody until such time as Ford complied with the order.

In response to the government's second petition, the district court issued an order to show cause, requiring Ford to appear at a hearing on June 7, 2007,[3] and

---

[2] In its order denying Ford's request for reconsideration, the district court specifically instructed Ford that, "[t]o avoid future sanctions and inform himself of what the law actually requires," Ford should "carefully read and consider the Tenth Circuit's opinion in [Lonsdale v. United States, 919 F.2d 1440 (10th Cir. 1990)] and the law review article by Danshera Cords, Tax Protestors and Penalties:  Ensuring Perceived Fairness and Mitigating System Costs, 2005 B.Y.U. L. Rev. 1515 (2005), and revise his behavior."

[3] The district court issued its decision to deny Ford's motion for reconsideration several hours before commencement of the June 7, 2007 hearing on the show cause order.

explain his alleged failure to comply with the April Order. At that hearing, the district court asked Ford to explain why he had not provided the requested testimony and documents. Ford responded at length, contending that the court lacked jurisdiction over him, that he had filed sufficient "returns" for the years in question, that he had the right to demand certain information from the IRS, that he was being forced to fraudulently supply a social security number, that he had no obligation to keep tax records, and that the summonses were irrelevant and invalid. Unmoved by these arguments, and finding that Ford had no valid basis for disobeying the court's April Order, the district court held Ford in civil contempt and ordered that he be taken into federal custody immediately. See 18 U.S.C. § 401 ("A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, . . . as . . . (3) [d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command."); United States v. Riewe, 676 F.2d 418, 421 (10th Cir. 1982) ("A taxpayer's failure to show cause . . . will justify the entry of a civil contempt order.") (citation omitted).

Later that same day, the court issued a written order directing that Ford be held in federal custody until he complies with the two summonses by providing the requested testimony and information. In an effort to end the impasse, however, the court also directed the government to immediately contact Ford to

attempt to obtain the information. Although the government did so, Ford again withheld his compliance, and he continues to do so through the present date.[4]

Several weeks after his initial incarceration, Ford filed a timely notice of appeal from the district court's decisions to enforce the IRS summonses and hold him in civil contempt. Ford also filed a request for release on his own recognizance with the district court. On November 2, 2007, the district court denied that request, but ordered that Ford be conditionally released "on submission of a cash bond payable to the IRS in the amount of $104,115.67." If Ford chose to submit the bond, in lieu of continued incarceration, the court required Ford also to pay "a $100/day fine, payable to the IRS, for each day [he] continues to refuse to obey the Court's April Order, guaranteed by the cash bond." Ford has declined to post the requested bond, asserting that if he did, he would concede that the district court had jurisdiction over him and that he would then become a participant in the fraud perpetrated against him by Pryor.

On December 21, 2007, we denied Ford's motion for release pending appeal because it appeared that the issues raised in the appeal were frivolous. We did, however, grant his request for an expedited appeal.

---

[4] The district court also ordered the government to provide weekly status reports regarding the IRS's efforts to obtain Ford's compliance with the April Order. Since Ford's arrest on June 7, 2007, the government has submitted the requested status reports. Each of those reports indicates that Ford continues to be unwilling to comply with the IRS summonses as ordered.

## II

In his appeal, Ford requests a writ of habeas corpus so that he can be released from his incarceration.  He also challenges the district court's order finding him in civil contempt, and the district court's rejection of two of the arguments he raised in protest of the IRS summonses.

### A

Ford first requests that this court grant his application for "the grand writ of habeas corpus."  We decline to do so because Ford's request is not properly before this court.  See Fed. R. App. P. 22(a) ("An application for a writ of habeas corpus must be made to the appropriate district court.  If made to a circuit judge, the application must be transferred to the appropriate district court.").  We instead direct that his request be transferred to the United States District Court for the District of New Mexico.

### B

Ford next challenges the district court's order to hold him in civil contempt, arguing that the district court abused its discretion in entering the contempt order because there was no clear and convincing evidence that Ford had violated the April Order.  We disagree.

"We review a district court's determination of civil contempt for abuse of discretion."  FTC v. Kuykendall, 371 F.3d 745, 756 (10th Cir. 2004).  A district court abuses its discretion if the "court's adjudication of the contempt

- 7 -

proceedings is based upon an error of law or a clearly erroneous finding of fact." John Zink Co. v. Zink, 241 F.3d 1256, 1259 (10th Cir. 2001). As the moving party in this case, the IRS had the initial "burden of proving, by clear and convincing evidence, that a valid court order existed, that the defendant had knowledge of the order, and that the defendant disobeyed the order." Reliance Ins. Co. v. Mast Constr. Co., 159 F.3d 1311, 1315 (10th Cir. 1998) (citation omitted). Once the IRS made that showing, the burden then shifted to Ford to show either that he had complied with the order or that he could not comply with it. See United States v. Rylander, 460 U.S. 752, 757 (1983) (stating that, in an action to enforce an IRS summons, the burden of production is on the taxpayer to show that compliance is impossible).

In advancing his evidentiary argument, Ford first asserts that a declaration from Pryor, submitted in conjunction with the government's second petition to enforce the summonses, did not provide clear and convincing proof of Ford's failure to comply with the April Order. His argument is meritless. Our review of Pryor's declaration convinces us that the information presented therein was more than sufficient to show that Ford failed to comply with the April Order. That declaration specifically states that Ford did not provide any responsive testimony or documentation when he met with Pryor on May 2, 2007.[5]

---

[5] In a related argument, Ford tells us that Pryor's declaration constituted inadmissible hearsay, and that the district court erred in relying on it to hold him in contempt. We also reject this contention. Pryor's declaration specifically

Nevertheless, even if we were to conclude that Pryor's declaration was insufficient without more, Ford's own statements at the June 7, 2007 hearing demonstrate that he did not provide either the requested testimony or the documentation sought by the IRS. Additionally, in his written answer to the government's second petition, Ford specifically confirms Pryor's assertion that "Ford has not provided any of the information requested in either IRS summons." Nor does Ford argue on appeal that he did provide this information. He instead claims that he substantially complied with the April Order by appearing before Pryor. Like the district court, we consider his alleged "compliance" to be deficient. A mere appearance before the IRS is insufficient in light of the court's order that Ford testify and provide the requested records. Ford also had ample opportunity at the show cause hearing to articulate his own position regarding what occurred at the May 2, 2007 meeting with Pryor. The district court asked him no less than four times to explain himself. In response to the court's questioning, Ford advanced no valid reason for refusing to provide the IRS with the requested testimony or documentation. He instead chose to reassert several frivolous arguments from his quiver of tax protestor contentions.

Without any evidence offered by Ford to rebut Pryor's declaration, the district court appropriately concluded that the clear and convincing evidence

mentioned statements made by Ford himself, which comfortably places any asserted hearsay within the document under the party-admission exclusion to the general hearsay rule. See Fed. R. Evid. 801(d)(2).

demonstrated Ford's failure to comply with the court's April Order. The district court thus did not abuse its discretion in ordering that Ford be held in civil contempt until such time as he tenders compliance with the April Order.

## C

Ford also raises a claim that the district court violated his due process rights by finding him in contempt before holding a "full evidentiary hearing" to address whether Ford had complied with the April Order. In light of the June 7, 2007 show cause hearing, this argument is meritless. The very purpose of that hearing was to determine whether Ford had violated the April Order. Again, the court repeatedly asked Ford at the hearing to explain his refusal to provide the requested testimony and documents when he met with Pryor. Rather than respond with any factual explanation, Ford instead chose to reassert the same irrelevant arguments as to why he did not believe he should comply with the summonses—arguments already rejected by the district court in the previous hearing. Ford cannot now complain that he was not given an opportunity to present his version of events.[6]

---

[6] We also reject Ford's argument that the district court violated his due process rights by failing to provide an opportunity for Ford to cross-examine Pryor regarding the content of his declaration. Ford did not ask the district court for such an opportunity. Additionally, as previously noted, Ford had ample opportunity to present the court with his version of what occurred at the May 2, 2007 meeting. In relating what happened in his answer to the government's second petition, Ford himself admitted that he had not provided any responsive documents or testimony. His admission was sufficient, standing alone, to justify the court's decision to hold him in contempt.

In a related argument, Ford claims that the district court denied him due process of law when it refused to hold a hearing on Ford's motion for reconsideration of the April Order, and instead decided the issues presented solely by reference to the pleadings. We again disagree. Ford did not provide the district court with a reason to conduct such a hearing. To the contrary, all of the issues raised by Ford in his motion for reconsideration were legal in nature, ripe for decision on the pleadings presented. We also note that Ford has not identified any issues on appeal that were compromised by the court's decision to base its ruling on the pleadings alone. See Thornburg v. Mullin, 422 F.3d 1113, 1142 (10th Cir. 2005) (holding that a district court did not err in denying a request for an evidentiary hearing where the movant made no showing of what evidence would be adduced or how it would be relevant).

**D**

In his final contention on appeal, Ford alleges that the district court erred in rejecting two of the arguments Ford advanced against the government's original petition for enforcement. He asserts that Pryor did not have delegated authority to issue the summonses, and that the form on which the summonses appear, IRS Form 2039, is obsolete and has been outlawed by the IRS.

Ford's claims are nothing more than oft-repeated tax protestor arguments that have long been rejected by the federal courts as "patently frivolous." See Lonsdale v. United States, 919 F.2d 1440, 1448 (10th Cir. 1990). We reject them

again today.  Ford's assertion that Pryor did not have delegated authority to issue the summonses has previously been deemed meritless by this circuit.  See id. (including in a list of meritless arguments the claim that employees of the IRS "have no power or authority to administer the Internal Revenue laws, including power to issue summons"); see also I.R.C. §§ 7602(a)(1)-(2) & 7701(a)(12)(A)(I); 26 C.F.R. §§ 301.7602-1(b) & 301.7701-9(b)-(c).  Similarly, "the fact that the IRS issued the summonses on Form 2039 does not render those summonses invalid."  Remark v. United States, 979 F.2d 770, 771 (9th Cir. 1992).  In short, neither of Ford's protest arguments is availing.  The district court therefore did not err in issuing the April Order requiring Ford to provide the requested testimony and documentation to the IRS, or in denying Ford's motion to reconsider.

### III

Like the district court, we once again remind Ford that he holds the proverbial keys to the prison doors.  He himself can choose to end his incarceration at any point in time, by simply complying with the IRS requests.

Ford's application for a writ of habeas corpus is **DISMISSED** as improperly made to this court and is ordered transferred to the United States District Court for the District of New Mexico for consideration.  The judgment of the district court is **AFFIRMED**.