**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**December 16, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

_____

JAMES R. LUCAS,

    Plaintiff - Appellant,

v.

DADSON MANUFACTURING
CORPORATION; PETER B. LUCAS,

    Defendants - Appellees.

No. 25-3074
(D.C. No. 2:22-CV-02107-KHV-ADM)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **HARTZ**, **EID**, and **CARSON**, Circuit Judges.

_____

Plaintiff James R. Lucas appeals from an order sanctioning him for civil

contempt and declining to sanction his opponents. We hold that Plaintiff has failed to

present an argument on appeal on how the district court abused its discretion in

declining to sanction the defendants. We also hold that the district court did not abuse

its discretion in sanctioning Plaintiff for civil contempt and that Plaintiff lacks

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

standing to appeal criminal sanctions that the district court did not actually impose on him. Finally, we hold that the district court did not demonstrate bias against Plaintiff.

## I.     BACKGROUND

From 2006 to 2017 Plaintiff served as chief executive officer and chairman of the board of Dadson Manufacturing Corporation. While he served in these roles, he at times took deferred salary and he made personal loans to Dadson. In 2017 Dadson terminated Plaintiff. Plaintiff sued in the District Court of Johnson County, Kansas, to recover his deferred salary and loans, naming as defendants Dadson, the Nancy F. Peterson Trust (the owner of Dadson), Nancy F. Peterson (Plaintiff's former mother-in-law and a trustee of the Nancy F. Peterson Trust), and Pamela Lucas (Plaintiff's ex-wife and a trustee of the Nancy F. Peterson Trust).

The defendants counterclaimed that Dadson had in fact overpaid Plaintiff for his personal loans and that Plaintiff had diverted Dadson assets to himself and his other companies and otherwise breached his fiduciary duties to Dadson. The jury awarded Plaintiff $278,066.05 against Dadson in deferred salary but also awarded Dadson $117,328.64 for conversion of overpaid loans and $400,000 for breach of fiduciary duty—leaving a net judgment of $239,262.59 against Plaintiff—and determined that Dadson was entitled to punitive damages.

On March 12, 2019, the parties reached a settlement. Dadson agreed not to seek punitive damages or initiate further actions against Plaintiff in exchange for Plaintiff's dismissal of his appeal and waiver of claims against Dadson, the Nancy F. Peterson Trust, Nancy Peterson, Pamela Lucas, and Peter Lucas (Plaintiff's son and

the President of Dadson at the time). Despite assenting to the settlement agreement, Plaintiff has brought numerous unsuccessful claims, motions, and appeals against the defendants, counsel, and others involved in the first suit relating to his deferred salary and personal loans.

The present appeal is from one such suit, this one filed in the United States District Court for the District of Kansas on March 18, 2022, against Dadson and Peter Lucas (Defendants). Given the releases in the settlement agreement, the district court granted Defendants' motion for summary judgment and entered judgment for Defendants on February 15, 2023. A month later Defendants moved for sanctions. At an evidentiary hearing on June 5, 2023, the parties agreed that Defendants would withdraw that motion in exchange for Plaintiff's agreeing not to file any new lawsuits against Dadson, Nancy Peterson, the Nancy Peterson Trust, Peter Lucas, Pamela Lucas, or Mark Bodine (counsel to Dadson and Peter Lucas) that related to the first suit. The court memorialized this agreement in a written order on June 9. The agreement and order mooted an earlier sanctions motion by Defendants, so the court denied the motion while retaining jurisdiction over the case. The court warned Plaintiff that it would consider the motion for sanctions if Plaintiff were to violate the order. Plaintiff appealed the order, and this court affirmed. *See Lucas v. Dadson Mfg. Corp.*, No. 23-3124, 2024 WL 1617302 (10th Cir. Apr. 15, 2024) (unpublished).

On November 5, 2024, Plaintiff filed a new lawsuit against Dadson, Peter Lucas, and Thomas Reppell (a former attorney for and director of Dadson) in the Circuit Court of Jackson County, Missouri, requesting that the defendants pay him

3

(1) $33,978.45 for previously having refused to accept a settlement offer for that amount, (2) $167,506.61 for his personal loans to Dadson, and (3) sanctions of $100,000 or more. His stated rationale for filing the new suit was his discovery that Dadson had been administratively dissolved in June 2022. The dissolution occurred shortly after Plaintiff filed the present case on March 18, 2022, but Plaintiff did not discover it until late 2024. According to Plaintiff, Defendants' refusal to accept his settlement offer in this case violated the requirement under Missouri law that a dissolved corporation must wind up and liquidate its business.

On January 24, 2025, Defendants filed a motion back in the federal district court for an order to show cause why the court should not hold Plaintiff in civil contempt and sanction him for violating the June 9, 2023 order. The requested sanctions included an award of attorney fees from this action and the Jackson County suit, injunctive relief barring Plaintiff from filing further actions without leave of court, and denying Plaintiff the right to proceed *in forma pauperis* on appeal. Plaintiff responded the next day with a motion for an order to show cause why the court should not hold Defendants in contempt for misleading the court about Dadson's status as a Missouri corporation.

The district court issued the requested orders to show cause and held a hearing on February 28. As to Plaintiff's conduct, the court observed that there was no dispute that a valid court order existed and that Plaintiff violated that order, leaving only the issue of appropriate sanctions. Defendants orally requested that the court incarcerate Plaintiff for 24 hours, but the court responded that the request had not

4

been made in their motion and that Defendants would need to file a new motion requesting Plaintiff's confinement. The court did award Defendants their legal fees and expenses to date in this case and the Jackson County case (together, $38,494.41), plus costs associated with the hearing itself in an amount that was later determined to be $5,280. Regarding Defendants' conduct, the court ruled that they had not engaged in sanctionable conduct.

## II.    DISCUSSION

### A.    Plaintiff's Request for Sanctions Against Defendants

Plaintiff first complains that the district court erred by refusing to sanction Defendants. Sanctions were warranted, he has argued, because Dadson had an "obligation, according to Missouri 351.478, to notify its known claimants in writing by the U.S. Postal Service of the dissolution at any time," Aplt. App., Vol. 6 at 21, yet Defendants continued to litigate against Plaintiff after Dadson's dissolution without notifying him or the district court. Had they done so, Plaintiff contends, he would have "pressed [Defendants] to follow Missouri law" by "negotiat[ing] an immediate settlement of [his] claims" under the "legal requirement" in § 351.476 of Missouri Revised Statutes that Dadson wind up and liquidate its business and affairs upon dissolution. Aplt. Br. at 22.

At the February 28, 2025 hearing the district court rejected Plaintiff's argument. It stated that "an administratively dissolved corporation can still be sued, and it can still sue. So the fact of dissolution does not abate or suspend any proceedings which were started before the effective date of dissolution." Aplt. App.,

Vol. 6 at 14–15. For that reason the dissolution was not material to the proceedings in the federal district court, which had commenced two months before Dadson dissolved. Also, "given [Plaintiff's] litigious history" with Defendants, the court thought it fanciful that notice of Dadson's dissolution would have led to a settlement on Plaintiff's terms in 2023. Aplt. App., Vol. 6 at 23. The court further noted that Plaintiff had not "identified any court order that [Defendants] have allegedly violated," but even if the court were to "construe [Plaintiff's] request for sanctions under Rule 11 or some other theory of inherent authority to sanction," Defendants "ha[d] not engaged in sanctionable conduct" and "ha[d] no obligation to disclose to the Court the fact that Dadson had dissolved in the course of the litigation." Aplt. App., Vol. 6 at 23–24.

In his appellate brief, Plaintiff asserts that the district court "completely misstated Missouri corporate law" by concluding that Defendants "could carry on litigation—essentially forever—despite the fact that the law itself only allows dissolved corporations 5 types of actions, which does not include forever litigation." Aplt. Br. at 23.

The relevant Missouri statute, however, does not support Plaintiff's assertion. Dissolution of a Missouri corporation does not "[a]bate or suspend a proceeding pending by or against the corporation" or even "[p]revent commencement of a proceeding by or against the corporation in its corporate name." Mo. Rev. Stat. § 351.476. Plaintiff's argument that a dissolved corporation must wind up quickly, even to the point of accepting a settlement offer simply because it is pending, is not

supported by the statute or by any authority supplied by Plaintiff or found by this court. His argument is inadequate to require us to conduct any further analysis of the matter. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). "Although a pro se litigant's pleadings are to be construed liberally" and "we make some allowances for the pro se plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements, the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." *Id.* (brackets, citation, and internal quotation marks omitted).

### B.     Sanctions Against Plaintiff

Plaintiff next complains that the district court erred by sanctioning him for Defendants' attorney fees and expenses in defending this action and answering the Jackson County suit. He claims that the district court ignored his argument that the 2025 phase of this case was triggered by his discovery of Dadson's dissolution and continuing litigation in violation of Missouri law. We review for abuse of discretion. *See Acosta v. Paragon Contractors Corp.*, 884 F.3d 1225, 1238 (10th Cir. 2018).

As the district court pointed out, Plaintiff did not dispute the existence of the June 9, 2023 order, his knowledge of the order, or his violation of the order by filing his lawsuit in Jackson County. *See United States v. Ford*, 514 F.3d 1047, 1051 (10th Cir. 2008) (party moving for civil contempt has "burden of proving, by clear and convincing evidence, that a valid court order existed, that the defendant had knowledge of the order, and that the defendant disobeyed the order" (internal

7

quotation marks omitted)). Plaintiff protests that Defendants' failure to inform him and the court of Dadson's dissolution justified him in filing the Jackson County suit. But we have already resolved that Defendants had no duty to immediately accept Plaintiff's settlement offer upon Dadson's dissolution. And even if Plaintiff actually believed the law to be to the contrary, an unreasonable motive for disobeying a court order is no excuse. *See Taggart v. Lorenzen*, 587 U.S. 554, 561 (2019) (stating that "a party's subjective belief that she was complying with an order ordinarily will not insulate her from civil contempt if that belief was objectively unreasonable").

Plaintiff also challenges the calculation of Defendants' attorney fees and expenses. But we see no error. In particular, he claims that no fees should be awarded for attorney work before the June 9, 2023 order. But the district court had made clear that if he violated that order, the court would consider Defendants' request for sanctions for misconduct predating the order.

Plaintiff also appears to argue that the district court's award of the costs of defending the Jackson County action should be offset by the costs that Defendants would have incurred defending the action if he had brought the suit in federal court. We find this argument nonsensical. If Plaintiff had filed suit in federal court rather than state court, he would still have been in breach of the order, and he would have been sanctioned for Defendants' federal-court costs.

### C.    Defendants' Request for Criminal Sanctions

Plaintiff next complains that Defendants orally requested a criminal sanction at the February 28, 2025 hearing and the court gave it some consideration. But no such

8

sanction was imposed; the court did not even begin the process for imposing a criminal sanction. Thus, Plaintiff has no injury of which to complain. *See Teaford v. Ford Motor Co.*, 338 F.3d 1179, 1181 (10th Cir. 2003) (where a purported injury does "not rise to the level of a sanction order, then [the plaintiff] has nothing from which to appeal, and we lack jurisdiction" (internal quotation marks omitted)).

### D.     Allegations of Bias

Plaintiff last complains that the district court erred by "allowing [the judge's] anger against, and disrespect of, [Plaintiff] . . . to infuse and color the entire hearing and decision-making process with bias." Aplt. Br. at 51 (capitalization omitted). But the record is clear that the court's displeasure with Plaintiff was based solely on his conduct in this litigation. Given this context, Plaintiff has failed to show the deep-seated favoritism or antagonism toward him that would make fair judgment impossible. *See Liteky v. United States*, 510 U.S. 540, 544–45, 545 n.1, 555 (1994). We reject the claim of bias.

### III.   CONCLUSION

We **AFFIRM** the judgment of the district court.

Entered for the Court

Harris L Hartz
Circuit Judge

9