**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 8, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

CLEARONE COMMUNICATIONS,
INC., a Utah corporation,

      Plaintiff - Appellee,

v.

LONNY BOWERS; JUN YANG;
ANDREW CHIANG; WIDEBAND
SOLUTIONS, INC., a Massachusetts
corporation; VERSATILE DSP, a
Massachusetts corporation, and
BIAMP SYSTEMS, an Oregon
corporation,

      Defendants.

DONALD BOWERS,

      Interested Nonparty - Appellant.

No. 10-4196

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. No. 2:07-CV-00037-TC-DN)**

---

Randolph Frails, Augusta, Georgia, for Interested Nonparty-Appellant Donald
Bowers.

James E. Magleby (Christine T. Greenwood, Christopher M. Von Maack, and
Jennifer Fraser Parrish, with him on the briefs), of Magleby & Greenwood, P.C.,
Salt Lake City, Utah, for Plaintiff-Appellee.

Before **BRISCOE,** Chief Judge, **HOLLOWAY** and **HOLMES**, Circuit Judges.

_____

**BRISCOE**, Chief Judge.

_____

Interested nonparty Donald Bowers appeals from orders of contempt issued against him by the district court. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

I

The factual and procedural history of the underlying case is summarized in our opinion in ClearOne Commc'ns, Inc. v. Bowers, et al., — F.3d — (10th Cir. 2011), and will not be repeated here. Instead, we will focus exclusively on the facts and district court proceedings relevant to the instant appeal.

In June of 2008, approximately eighteen months after plaintiff ClearOne Communications, Inc. (ClearOne) initiated the underlying case seeking relief for alleged misappropriation of its trade secrets[1], Donald Bowers and a Georgia-based company he founded called WideBand Solutions, Inc. (WideBand Georgia), entered into an agreement with defendants WideBand Solutions, Inc. (WideBand), Lonny Bowers (Donald Bowers' son), Andrew Chiang, and Jun Yang (collectively the WideBand defendants) pursuant to which WideBand would transfer its assets

_____

[1] The trade secrets allegedly included an acoustic echo cancellation algorithm and sub-algorithms, in both source and object code form, nicknamed the Honeybee Code.

2

to WideBand Georgia. At that time, Donald Bowers was loaning money to the WideBand defendants to pay a portion of the legal fees they were incurring in connection with the underlying case. ClearOne, upon learning of the asset transfer agreement, filed a motion for a temporary restraining order (TRO) and preliminary injunction to prevent any transfer of its alleged trade secret.

The district court held a hearing on ClearOne's motion on June 18, 2008, during which attorney Randolph Frails appeared by telephone as the legal representative for Donald Bowers. Frails represented during the hearing that the language of the asset transfer agreement excluded the trade secrets that the WideBand defendants had purportedly misappropriated from ClearOne. Nevertheless, the district court ordered Frails and Donald Bowers to provide counsel for ClearOne and the WideBand defendants with copies of the asset transfer agreement.

The following day, June 19, 2008, ClearOne filed a renewed motion for a TRO and preliminary injunction alleging that, contrary to Frails' representations, the terms of the asset transfer agreement included WideBand's intellectual property, most notably the Honeybee Code.[2] ClearOne that same day also filed with the district court a separate lawsuit against WideBand Georgia and Donald Bowers alleging fraudulent transfer. See ClearOne Commc'ns, Inc. v. WideBand

---

[2] Although the district court subsequently agreed that "Frails' representations turned out to be inaccurate," it "did not find . . . that . . . Frails committed perjury during the June 18, 2008 hearing." JA at D21409.

3

Solutions, Inc., No. 2:08-CV-00474-TS (D. Utah).

On June 20, 2008, the district court held a hearing on ClearOne's renewed motion. During that hearing, Frails, again appearing by telephone to represent Donald Bowers, stated, "'even though we're [,i.e., Donald Bowers and WideBand Georgia,] not part of this litigation, we're quasi part of this litigation and, you know, we're inclined to do whatever the court tells us to do.'" JA at D21410 (quoting JA at T717). The district court emphasized during the hearing "that it did not want WideBand . . . 'gutted,'" id. (quoting JA at T725), and it "ordered counsel for the parties, as well as . . . Frails, to work together to present the court with a proposed stipulated order," id. at D21411.

The district court held a third hearing on June 26, 2008, to address the asset transfer agreement. Frails again appeared by telephone on behalf of Donald Bowers and WideBand Georgia. During the hearing, the district court issued a TRO prohibiting the WideBand defendants from transferring the Honeybee Code. The TRO also expressly prohibited the transfer of any related items, including all of the various codes that Yang had allegedly derived from the Honeybee Code while working for WideBand, and it directed the WideBand defendants to make a full disclosure and production of all documents relating to the asset transfer agreement.

On July 10, 2008, the district court, prompted by another TRO motion filed by ClearOne, held a fourth hearing concerning the asset transfer agreement.

4

"Frails again appeared by telephone on behalf of WideBand Georgia and Donald Bowers." Id. at D21414. During the hearing, Frails stated that "'the actual asset purchase ha[d] been rescinded because in essence [his] client[, Donald Bowers,] felt that he was buying nothing.'" Id. (quoting JA at T777). In turn, Frails argued that ClearOne's TRO motion was moot because no assets had been transferred and the asset transfer agreement had been rescinded. Based upon Frails' representations, the district court denied ClearOne's TRO motion as moot.

In October 2008, the district court granted Donald Bowers' motion to dismiss ClearOne's case against him and WideBand Georgia without prejudice on the basis that the claims, all of which concerned the purportedly rescinded asset transfer agreement, were moot.

ClearOne's case against the WideBand defendants and defendant Biamp Systems (Biamp) proceeded to trial in late October 2008. On November 5, 2008, the jury returned a verdict in favor of ClearOne on all of its claims, including its misappropriation of trade secrets claims.

On January 16, 2009, ClearOne filed a motion for an order to show cause why the WideBand defendants and Donald Bowers should not be held in contempt of the district court's June 26, 2008 TRO. In support, ClearOne alleged that "the day after the Verdict, on November 6, 2008, Don[ald] Bowers filed a UCC statement in the State of Massachusetts, purporting to perfect a security interest in all of the assets of WideBand . . . , including all 'software,' all 'intellectual

5

assets,' and all 'intellectual property.'" Id. at D13253 (emphasis in original).

On January 26, 2009, the district court issued an order to show cause directing the WideBand defendants and Donald Bowers to appear before the court on February 10, 2009, and show cause why they should not be held in contempt for the reasons alleged in ClearOne's motion. Donald Bowers subsequently failed to appear at the February 10, 2009 show cause hearing, "despite evidence that he was properly served with the [district court's show cause order], had notice of the hearing date, and was ordered to appear in person." Id. at D15956.

On February 24, 2009, the district court issued a written order "follow[ing] up on issues that arose during th[e] [February 10, 2009] hearing." Id. at D15955. The district court concluded that Donald Bowers, "as a person 'in active concert or participation' with the WideBand Defendants, [wa]s subject to" the district court's June 26, 2008 TRO. Id. at D15957. The district court found that "[o]n November 6, 2008, Donald Bowers filed a UCC Statement in Massachusetts listing WideBand . . . as a debtor to Secured Party Donald Bowers," and describing the relevant collateral as all of the assets of WideBand, including its intellectual property. Id. at D15958. Although the district court "f[ound] that there [wa]s evidence that Don[ald] Bowers and one or more of the WideBand Defendants violated the June 26, 2008 [TRO]," it ultimately "continued" the issue of whether Donald Bowers should be held in contempt of the district court's June 26, 2008 TRO, and directed Donald Bowers to appear in person before the court

6

on March 13, 2009, "to show cause why [he] should not be held in contempt for violating the June 26, 2008 Order." Id. at D15960-61. On March 5, 2009, the district court vacated its February 24, 2009 show cause order and ordered that a show cause hearing regarding Donald Bowers would be rescheduled at a future date.

On April 9, 2009, the district court issued a permanent injunction prohibiting the Wideband defendants "from disclosing, using or transferring in any way the trade secret owned by . . . ClearOne . . . called the Honeybee Code (including its unique algorithms or sub-algorithms that are not in the public domain), whether in the form of source code, object code, or any other form, and any code or product substantially derived from the Honeybee Code," id. at D17520, as well as "disclosing, using, or transferring in any way the product development documentation for the Honeybee Code or any other documentation that reveals the contents of the Honeybee Code," id. at D17521. The injunction also prohibited the WideBand defendants from "marketing, selling, manufacturing, develop[ing], modif[ying], duplicat[ing], or transport[ing] or deliver[ing] . . . technology containing the Honeybee Code or any product substantially derived from the Honeybee Code . . . ." Id. Shortly thereafter, on April 21, 2009, the district court entered final judgment in favor of ClearOne.

On April 28, 2009, the district court issued an order rescheduling for June 3, 2009, the show cause hearing regarding Donald Bowers. In its order, the

7

district court directed both Donald Bowers and Randolph Frails to appear and testify by telephone at the June 3, 2009 hearing. As directed, both Donald Bowers and Frails appeared by telephone at the June 3, 2009 hearing. At the outset of that hearing, Donald Bowers orally moved for the district court to recuse, citing the district judge's purported financial conflict of interest. The district court denied the oral motion and took the matter of Donald Bowers' contempt under advisement.

On July 16, 2009, ClearOne moved to enforce the April 9, 2009 permanent injunction and for contempt. In support, ClearOne alleged that the WideBand defendants had "transferred the assets of WideBand . . . to a new, sham company called DialHD, Inc. ('DialHD')." Id. at D20339. According to ClearOne, DialHD was "registered to . . . Donald Bowers, . . . operate[d] out of the same Connecticut office as previously . . . occupied by WideBand," and was "continu[ing] the same business as WideBand," in particular selling "'BoardroomHD'" products that incorporated "the same trade secrets and related technology that [we]re the subject of the . . . Permanent Injunction." Id. ClearOne also alleged that the WideBand defendants, Donald Bowers, and WideBand employee David Sullivan "ha[d] conspired and transferred, hidden, and claimed to destroy, the very Wide[B]and assets that th[e] Court ordered to be preserved in at least three orders, in addition to the Permanent Injunction." Id.

On July 17, 2009, the district court directed the WideBand defendants,

8

Donald Bowers, DialHD, and David Sullivan, to appear before the court on July 31, 2009, and "show cause at that time why they should not be held in contempt of the court's orders . . . for the conduct described in" ClearOne's motion. Id. at D20411. Although the district court's order authorized the defendants and interested nonparties "to appear at the hearing by telephone," id. at D20412, it "strongly urge[d] [them] to appear in person," id., and warned that if they did not, "they [would] be precluded from offering testimony, offering witnesses, or cross-examining witnesses," id. at D20413 (emphasis in original), and would instead be limited to "listen[ing] to the evidence presented and . . . mak[ing] argument on [their] own behalf," id.

At the July 31, 2009 show cause hearing, Donald Bowers, as well as the WideBand defendants, appeared on their own behalf via telephone. The district court heard testimony from three witnesses presented by ClearOne and received exhibits submitted by ClearOne. At the conclusion of the hearing, the district court issued a TRO "effective immediately as of its issuance in open court." Id. at D20682.

On August 5, 2009, the district court issued a written TRO memorializing its findings and conclusions in support of the TRO it orally issued at the July 31, 2009 hearing. The district court found that ClearOne "ha[d] demonstrated a substantial likelihood of success on the merits of its claim that [certain] DialHD Infringing Products illegally utilize[d] the Honeybee Code," and "ha[d] met the

9

other elements necessary for issuance of a TRO to preserve the status quo with regard to these products." Id. at D20683. Accordingly, the district court held that the DialHD infringing products would "be considered as subject to the same restrictions as set forth" in the April 9, 2009 permanent injunction order with respect to WideBand's infringing products. Id. The district court also ordered Donald Bowers and DialHD "not to transfer, encumber, pledge, alienate, or try to dispose of or hide any DialHD . . . assets until further order of" the court. Id. at D20684.

On August 17, 2009, the individual WideBand defendants filed an emergency motion for reconsideration complaining that they were not allowed to cross-examine ClearOne's witnesses at the July 31, 2009 show cause hearing, and asking the district court to amend its TRO "in such a way as to permit Donald Bowers and Dial[HD] . . . to market, sell, manufacture, develop, modify, duplicate, and transfer DialHD products," or "set[] aside . . . the . . . TRO in its entirety . . . ." Id. at D20854. Alternatively, the individual WideBand defendants asked for "the opportunity for all parties subject to the July 17, 2009 Order to present evidence, offer testimony, and cross-examine [ClearOne]'s witnesses at a new hearing on all issues pertaining to [the] TRO . . . ." Id. The district court denied defendants' motion on August 31, 2009, noting that the motion "raise[d] arguments the court ha[d] already heard and denied for various reasons apparent on the record" and thus "raise[d] nothing new and ha[d] no merit." Id. at

10

D21401.

On September 3, 2009, the district court issued a memorandum decision and order of contempt finding, on the basis of the evidence presented at the June 3, 2009 show cause hearing, Donald Bowers in contempt for the post-verdict act of filing a UCC financing statement encumbering WideBand's assets, as well as for failing to appear at the February 10, 2009 contempt hearing. Based on these findings, the district court directed Donald Bowers to take actions to assure the court that he had removed any encumbrances he had placed on WideBand's assets and to pay ClearOne's attorneys' fees and costs associated with the contempt proceedings against him.

On September 17, 2009, Donald Bowers filed a personal Chapter 7 bankruptcy petition in Georgia. The automatic stay entered in connection with the filing of that bankruptcy petition prevented ClearOne from collecting on the contempt judgment for fees and costs and prevented, for a period of time, the district court's consideration of ClearOne's subsequent allegations that Donald Bowers was committing additional contemptuous acts.

On October 22, 2009, ClearOne moved for an order to show cause for violation of the August 5, 2009 TRO. In support, ClearOne alleged that the WideBand defendants had failed to remove from the market certain offending products, and that a sham Chinese company was utilizing the Honeybee Code to manufacture new offending products for DialHD to distribute. The district court

11

held a hearing on ClearOne's motion on November 9, 2009.  On November 19, 2009, the district court issued an order finding that Lonny Bowers, Yang, WideBand, and DialHD were "in contempt of court for . . . selling WideBand's Simphonix Si-400 product in the guise of DialHD's AEC4 and HD4551 products, all of which contain[ed] the Honeybee Code." Id. at D22291.  The district court ordered "the Contemnors . . . to pay attorneys' fees and damages sustained by ClearOne as a result of their contemptuous behavior." Id.  The district court also expanded its August 5, 2009 TRO and amended the April 9, 2009 permanent injunction "to expressly include the DialHD HD4551 product and any other DialHD product using the Honeybee Code," id. at D22351, directed "DialHD . . . and all those working in active concert or participation with [it to] immediately halt all development, sale, and/or marketing of all DialHD products, including in China," id., and directed "Contemnors [to] arrange for and obtain delivery to . . . ClearOne . . . of all code and other design materials and intellectual property covered by the" permanent injunction and TRO, id. at D22352.

On February 11, 2010, ClearOne filed an ex parte motion seeking the addition of Donald Bowers to the district court's November 19, 2009 contempt order and amended permanent injunction.  In support, ClearOne alleged that on December 29, 2009, the bankruptcy court overseeing Donald Bowers' Chapter 7 bankruptcy proceedings "lifted the automatic stay, specifically to allow the contempt proceedings against Donald Bowers to go forward." Id. at D22695.

12

The district court denied ClearOne's motion, but issued a show cause order on April 7, 2010, directing Donald Bowers to "appear personally or through counsel before the court on . . . May 27, 2010 . . . to show cause . . . why he should not be held in contempt of the court's" August 5, 2009 TRO. Id. at D22743 (emphasis in original omitted).

On May 27, 2010, the district court held the scheduled show cause hearing. Donald Bowers did not appear in person, but was represented by counsel at the hearing. On August 13, 2010, the district court issued a civil contempt order and memorandum decision finding Donald Bowers "in contempt of court for his acts violating the court's prohibition on possession, disclosure, use, marketing, or selling products containing ClearOne's stolen trade secret and the court's prohibition on diversion of Defendant WideBand['s] . . . assets." Id. at D23424. More specifically, the district court found that Donald Bowers "surreptitiously re-packag[ed] and s[old] products containing the stolen trade secret" and "participated in the diversion of WideBand['s] . . . assets in an attempt to avoid the WideBand Defendants' obligation to pay a multi-million dollar judgment to ClearOne." Id. at D23426. The court further found that Donald Bowers "ha[d] committed fraud on the court by making false statements to the court and withholding material information from the court in a manner obstructing the court's ability to enforce its orders and final judgment against the WideBand Defendants." Id. at D23424-25. In short, the district court concluded that "[a]ll

13

of the evidence [established] Donald Bowers' complete lack of regard for the jury verdict and the court's rulings." Id. at D23455. Accordingly, the district court directed that: the August 5, 2009 TRO be "expanded to expressly include Donald Bowers," id.; the November 19, 2009 amended permanent injunction be modified and expanded "to reflect the developments" noted in its order, id.; "Donald Bowers, and all those working in active concert or participation with [him] . . . immediately halt all development, sale, and/or marketing of all DialHD products, including in China," id.; "Donald Bowers arrange for and obtain the delivery to the United States, care of ClearOne or its designated agent, of all code and other design materials and intellectual property covered by the Amended Permanent Injunction," id. at D23455-56, and to "provide written evidence to the court and ClearOne confirming that he ha[d] done so, no later than . . . September 17, 2010," id. at D23456; "Donald Bowers . . . self-surrender to th[e] court on . . . October 13, 2010 . . . for incarceration (or be subject to arrest through a bench warrant) unless and until he ha[d] proven to the court that he ha[d]" complied with the court's directives, id.; and Donald Bowers pay ClearOne's reasonable attorneys' fees and costs in pursuing the contempt order against him.

On that same date, August 13, 2010, the district court also issued a second amended permanent injunction against all of the defendants in the case, as well as Donald Bowers. The injunction, in pertinent part, permanently enjoined the WideBand defendants and Donald Bowers "from disclosing, using or transferring

14

in any way the . . . Honeybee Code (including its unique algorithms or sub-algorithms that [we]re not in the public domain), whether in the form of source code, object code, or any other form, and any code or product substantially derived from the Honeybee Code," as well as "from disclosing, using, or transferring in any way the product development documentation for the Honeybee Code or any other documentation that reveal[ed] the contents of the Honeybee Code." Id. at D23459. The injunction also listed specific infringing products, including various WideBand products, as well as "DialHD['s] . . . products sometimes identified as the 'AEC4,' the 'Mix-4' or 'Automixer,' and the HD4551; and the Longoo ACON1001." Id. at D23460.

On October 13, 2010, the district court held a hearing to determine whether Donald Bowers "had purged himself of contempt by disclosing and providing [the] specified information and infringing products." Dist. Ct. Docket No. 2319, at 1. "Based on" what it characterized as "the meager submission to th[e] court by Donald Bowers along with the fact that he did not appear at the hearing despite being ordered to do so," the district court found "that Donald Bowers ha[d] not purged himself of contempt and [wa]s subject to arrest and incarceration in an attempt to coerce his compliance with the court's Contempt Order." Id. Consequently, that same day, the district court issued a bench warrant for Donald Bowers for failure to appear before the court.

On November 1, 2010, Donald Bowers filed a notice of appeal.

On appeal, Donald Bowers contends that the district court erred in four respects: (1) in holding him in contempt of its injunctive orders; (2) in determining that it could exercise personal jurisdiction over him; (3) in directing him to appear in person at the July 31, 2009 show cause hearing, and in turn denying him the opportunity to present evidence and cross-examine ClearOne's witnesses due to his failure to appear in person at that hearing; and (4) in refusing to recuse from the underlying case prior to trial and/or prior to the commencement of post-judgment proceedings. We conclude, as discussed in more detail below, that the district court did not err in any of these regards.

*1) The district court's contempt findings*

In his first issue on appeal, Donald Bowers contends the district court erred in holding him in contempt of its injunctive orders. In support, Donald Bowers asserts four subissues: (1) ClearOne's experts did not and could not show that DialHD's products contained the Honeybee Code; (2) even assuming the DialHD products incorporated the Honeybee object code, he could not be held responsible for misappropriating ClearOne's trade secret because there was no evidence he ever had possession of the Honeybee source code; (3) he did not transfer any assets in violation of the district court's June 26, 2008 TRO; and (4) he complied with the district court's discovery and disclosure requests to the best of his ability.

"We review a district court's determination of civil contempt for abuse of discretion." United States v. Ford, 514 F.3d 1047, 1051 (10th Cir. 2008) (internal quotation marks omitted). "A district court abuses its discretion if the court's adjudication of the contempt proceedings is based upon an error of law or a clearly erroneous finding of fact." Id. (internal quotation marks omitted). As the moving party in this case, ClearOne "had the initial burden of proving, by clear and convincing evidence, that a valid court order existed, that [Donald Bowers] had knowledge of the order, and that [Donald Bowers] disobeyed the order." Id. (internal quotation marks omitted). "Once [ClearOne] made that showing, the burden then shifted to [Donald Bowers] to show either that he had complied with the order or that he could not comply with it." Id.

*a) Insufficiency of ClearOne's expert evidence*

Donald Bowers argues that the testimony of ClearOne's expert witnesses at the July 31, 2009 show cause hearing regarding the similarities between DialHD's AEC-4 product and a WideBand product merely established that the two products were physically similar, but did not otherwise establish that the DialHD product contained the Honeybee Code. Moreover, he argues, had he "been allowed to refute" this testimony, "his arguments would have all but eviscerated ClearOne's 'likelihood of success' argument for expansion of its injunction." Aplt. Br. at 26. "Thus," he argues, he "was unduly prejudiced throughout the course of both the July 31, 2009 hearing and, by extension, all subsequent contempt hearings related

17

thereto . . . ." Id. at 27.

The record on appeal refutes Donald Bowers' arguments. At the July 31, 2009 hearing, ClearOne presented the testimony of three witnesses. The first witness, private investigator Andrew Moan, testified that he had recently purchased an acoustic echo cancellation (AEC) product called AEC4 made by DialHD. Moan further testified that the company he purchased the AEC4 unit from, Lucid Corporation, informed him "that WideBand had gone through some corporate changes and had revised their company line and changed their name to Dial[HD] and had also updated some technology." JA at T4933. According to Moan, Lucid also informed him that the AEC4 unit "operate[d] on the same platform as the Simphonix SI-400[, a WideBand-created product that was found to incorporate the Honeybee Code]." Id. at T4936. Moan testified that when he telephoned DialHD, he ultimately spoke with Lonny Bowers, who identified himself as DialHD's "technology evangelist." Id. at T4940.

ClearOne's second witness was Derek Graham, ClearOne's vice president of research and development. Graham testified that the DialHD AEC4 unit purchased by Moan was shipped in a box that included a necessary component called an isolation transformer, and that the isolation transformer said "WideBand Solutions" on it. Id. at T4949. Graham further testified that the inside of the DialHD AEC4 unit was identical to a WideBand Simphonix AEC unit. Graham testified that he performed comparative testing on the DialHD AEC4 and

18

WideBand Simphonix units, including a frequency sweep test and a single tone test on each unit, and that the frequency responses "overlap[ped] almost exactly," something he would not expect to find if the two products "were running independently developed algorithms . . . ." Id. at T4956. The DialHD AEC4 and WideBand Simphonix units also produced identical results on the single tone test, according to Graham. Graham testified that he did not believe it was possible for someone to have developed from scratch a working AEC algorithm between June 5, 2008 (the last day of trial), and June 2009 (when the DialHD AEC4 unit was purchased). Graham testified that the DialHD AEC4 and WideBand Simphonix units contained the same Federal Communications Commission (FCC) identification numbers, even though different products are required to have their own unique FCC identification numbers, and that FCC identification numbers cannot be transferred. Consequently, Graham testified, the DialHD AEC4 unit had to be functionally identical to the WideBand Simphonix unit, or DialHD was violating FCC rules and regulations. Graham testified that he had carefully examined the circuit boards in both the DialHD and WideBand units and they appeared to be identical. According to Graham, it would be impossible for two identical circuit boards to have been independently designed. In sum, Graham opined "that the Dial[HD] AEC-4 [wa]s a repackaged [WideBand] Simphonix SI-400 product." Id. at T4996.

ClearOne's third and final witness was Thomas Makovicka, the same expert

19

witness that ClearOne had utilized at trial. Makovicka opined that the DialHD and WideBand units utilized "the same algorithms . . . ." Id. at T5003. In support of this opinion, Makovicka testified that the DialHD and WideBand units "ha[d] the same spectral distortions," "the same frequency response," and "used the identical filter bank design . . . ." Id.

At the conclusion of the hearing, the district court found that there was a substantial likelihood that ClearOne "would prevail on the question of whether the products that [we]re at issue . . . [we]re in fact employing the Honeybee Code," and that ClearOne would suffer irreparable harm "if the assets were transferred again . . . ." Id. at T5095.

In sum, we conclude, having reviewed in detail the testimony of the three ClearOne witnesses, that the district court's factual findings were not clearly erroneous, but rather were well supported by the evidence.

*b) Silvaco-based arguments*

Donald Bowers next argues that, even assuming the DialHD products incorporated the Honeybee object code or modified versions thereof, he could not, as a matter of law, be held responsible for misappropriating ClearOne's trade secret because there is no evidence he ever had possession of the Honeybee source code. In support of this argument, he cites to the California Court of Appeal's decision in Silvaco Data Systems v. Intel Corp., 109 Cal. Rptr. 3d 27 (Ct. App. 2010).

20

The plaintiff in that case, Silvaco, was the developer of electronic design automation software, i.e., software used to design electronic circuits and systems. Silvaco filed suit against defendant Intel, a developer and manufacturer of integrated circuits, alleging that Intel had misappropriated certain trade secrets used by Silvaco in its software products. "The primary gist of the claims was that Intel had used software acquired from another software concern with knowledge that Silvaco had accused that concern of incorporating source code, stolen from Silvaco [by former employees], in its products." Id. at 34. "The chief question presented" in the case was "whether Intel could be liable for such use if, as was effectively undisputed, it never possessed or had access to the source code but only had executable, machine-readable code compiled by its supplier from source code." Id. The California Court of Appeal "answer[ed] that question in the negative." Id. Specifically, the court held: "One does not, by executing machine-readable software, 'use' the underlying source code; nor does one acquire the requisite knowledge of any trade secrets embodied in that code." Id.

Although Donald Bowers suggests that the instant case is indistinguishable from Silvaco, we disagree. ClearOne has not asserted any claims against Donald Bowers in the underlying suit. Instead, Donald Bowers was found by the district court to have been in active concert or participation with the WideBand defendants in violating the district court's restraining and injunctive orders by producing and selling products that utilized the misappropriated trade secret.

21

Consequently, it was unnecessary for ClearOne to establish the essential elements of a trade secret misappropriation claim against Donald Bowers. Instead, all ClearOne had to establish was that Donald Bowers violated the terms of the district court's injunctive orders. Consequently, Silvaco is inapposite.

Donald Bowers also argues that ClearOne "could not make a trade secret misappropriation claim based on the use of the [Honeybee] object code" because that code "is *readily accessible to the public*." Aplt. Br. at 35 (italics in original). Again, however, ClearOne has not asserted any causes of action against Donald Bowers in the underlying case. Instead, ClearOne alleged, and the district court found, that Donald Bowers, in active concert or participation with the WideBand defendants, violated the district court's injunctive orders.[3]

*c) Transfer of assets in violation of 6/26/08 injunction*

Donald Bowers next contends that, contrary to the district court's findings in its August 13, 2010 civil contempt order and memorandum decision, he did not violate the terms of the district court's June 26, 2008 TRO because he never transferred any assets from WideBand to WideBand Georgia.[4] In support, Donald

---

[3] We note that the WideBand defendants made this precise argument at trial (i.e., that the Honeybee Code was wholly derived from publicly available information) and the jury rejected it.

[4] In his opening appellate brief, Donald Bowers refers to the district court's "July 26, 2008 Injunctive Order." Aplt. Br. at 39. Because no such order exists, we assume that Donald Bowers intended to refer to the district court's June 26, 2008 TRO.

22

Bowers argues that: (a) the district court erred in inferring that WideBand Georgia received monies from WideBand; (b) the district court "erred in allowing ClearOne to misconstrue the testimony of Lonny Bowers as meaning that WideBand G[eorgia] was a 'distributor' for WideBand," Aplt. Br. at 39; (c) "ClearOne never established any relationship whatsoever between [Donald] Bowers and [the Chinese company] Longoo," and in fact "sworn testimony clearly showed that neither Dial HD nor WideBand Georgia had any dealings with the Chinese company," id. at 40; and (d) "neither ClearOne nor the Trial Court definitively established the existence of a 'common scheme' within the meaning of Fed. R. Civ. P. 65 as to the 'Longoo' matter, given that . . . ClearOne's examinations of Dial HD's and Longoo's equipment were grossly inaccurate," id. at 39-40. We conclude, however, that these arguments lack merit.

It was undisputed that WideBand Georgia, which Donald Bowers created in June of 2008, received approximately $1.36 million in deposits from some source between the time of its incorporation and September 30, 2009. Neither Donald Bowers nor the WideBand defendants, however, ever produced any evidence explaining the source of these deposits, despite discovery orders issued by the district court directing them to do so. This stonewalling on the part of the WideBand defendants and Donald Bowers, combined with substantial evidence indicating that WideBand Georgia was intimately involved with the business of WideBand and the other WideBand defendants (including continuing to sell

23

infringing products, paying WideBand's expenses, and funneling money to the WideBand defendants and Donald Bowers), was more than sufficient to allow the district court to infer that WideBand was the source of the $1.36 million in deposits received by WideBand Georgia.

We likewise conclude that the district court did not err in construing Lonny Bowers' testimony to mean that WideBand Georgia acted as a distributor for WideBand. At the November 9, 2009 show cause hearing, Lonny Bowers testified that WideBand Georgia, using WideBand's employees, sold WideBand's products and returned some or all of the sales proceeds to WideBand. JA at T5147-48. Moreover, other evidence in the record, including check records from WideBand Georgia, supported Lonny Bowers' testimony. Thus, the district court's factual finding was not clearly erroneous.[5]

As for Donald Bowers' two arguments concerning his connection, or lack thereof, to the Chinese company Longoo, he offers no explanation as to how this relates to the district court's finding that he violated the terms of the June 26, 2008 order prohibiting him from diverting WideBand's assets into WideBand Georgia. Thus, we find it unnecessary to address these arguments in detail.

In connection with his challenge to the district court's findings that he

---

[5] The only evidence Donald Bowers cites in support of his argument that the district court erred in making this factual finding is an August 31, 2010 affidavit from Lonny Bowers essentially recanting his testimony at the November 9, 2009 show cause hearing.

violated the terms of the June 26, 2008 TRO, Donald Bowers separately argues that the district court "committed reversible error to the extent that it based its findings of contempt upon alleged monetary asset transfers between WideBand . . . and WideBand G[eorgia]." Aplt. Br. at 43. According to Donald Bowers, the district court lacked the authority to impose any type of pre-judgment asset-freezing order on WideBand or WideBand Georgia because "no nexus of any kind existed between" the assets of those two companies "and the equitable relief sought,'" and "ClearOne had no lien or equitable interest in the companies' monetary funds." Id.

The threshold problem with this argument is that Donald Bowers fails to cite to where, if at all, in the voluminous record on appeal that he raised this argument and that the district court ruled on it. See 10th Cir. R. 28.2(C)(2) ("For each issue raised on appeal, all briefs must cite the precise reference in the record where the issue was raised and ruled on."). Consequently, we are under no obligation to address his argument on the merits. See Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 679 (10th Cir. 1998) ("Arguments inadequately briefed in the opening brief are waived . . . .").

Even overlooking this deficiency, we conclude there is no merit to Donald Bowers' argument. In its original and subsequent amended complaints, ClearOne consistently sought equitable relief in the form of the return of the trade secret, i.e., the Honeybee Code, that had been purportedly misappropriated by the

25

WideBand defendants. The district court's June 26, 2008 preliminary injunction, which prohibited WideBand from transferring the Honeybee Code or any related items to WideBand Georgia, was obviously and reasonably aimed at preserving the status quo so that, in the event ClearOne ultimately prevailed on its misappropriation claims, its request for equitable relief would not have been rendered moot. See De Beers Consol. Mines v. United States, 325 U.S. 212, 219 (1945) ("In truth the purpose and effect of the injunction is to provide security for performance of a future order which may be entered by the court."); id. at 220 ("A preliminary injunction is . . . appropriate to grant intermediate relief of the same character as that which may be granted finally.").

*d) Donald Bowers' efforts to comply with the district court's orders*

In his fourth and final challenge to the district court's contempt findings, Donald Bowers asserts that he complied with the district court's discovery and disclosure requests to the best of his ability, and thus "[i]t was wholly unethical for Clear One or the [district court] to punish [him] simply because the information he provided them did not meet with their subjective approval." Aplt. Br. at 45. Consequently, he argues, the district court "should have absolved [him] of contempt once his disclosures were made and once he had shown that he had made a good faith effort to contact Longoo Corp., and it abused its discretion by continuing to hold [him] in contempt and by issuing a bench warrant against him." Id. at 45-46.

26

These arguments are meritless.  To begin with, Donald Bowers never identifies with any specificity what efforts he took to comply with the district court's discovery and disclosure requests.  And, in any event, the record on appeal refutes his assertion that he tried to the best of his ability to comply with the district court's orders.  For example, the district court, in its August 13, 2010 order of contempt, found that Donald Bowers "violate[d] the court's prohibition on possession, disclosure, use, marketing, or selling products containing ClearOne's stolen trade secret and the court's prohibition on diversion of Defendant WideBand['s] . . . assets."  JA at D23424.  In addition, the district court found that Donald Bowers "committed fraud on the court by making false statements to the court and withholding material information from the court in a manner obstructing the court's ability to enforce its orders and final judgment against the WideBand Defendants."  Id. at D23424-25.  Notably, Donald Bowers makes no attempt to directly refute these findings.

*2) District court's exercise of personal jurisdiction over Donald Bowers*

In his second issue on appeal, Donald Bowers argues that the district court could not, at any point during the litigation, legally exercise personal jurisdiction over him because he was a nonresident and nonparty.  We review de novo questions of personal jurisdiction.[6]  See Benton v. Cameco Corp., 375 F.3d 1070,

_____

[6] Donald Bowers again fails to cite in his appellate brief precisely where in the record on appeal that he raised this issue and that the district court ruled on it.

(continued...)

27

1074 (10th Cir. 2004).

This court has not previously addressed the question of whether a district court may properly exercise personal jurisdiction over a nonresident nonparty who, in active concert or participation with a party, has violated an injunction. But other circuits have done so. Most notably, the Fifth and Seventh Circuits have held that "[n]onparties who reside outside the territorial jurisdiction of a district court may be subject to that court's jurisdiction" for purposes of contempt proceedings "if, with actual notice of the court's order, they actively aid and abet a party in violating that order." Waffenschmidt v. MacKay, 763 F.2d 711, 714 (5th Cir. 1985); see also Sec. and Exch. Comm'n v. Homa, 514 F.3d 661, 673-75 (7th Cir. 2008).

The rationale for this holding was succinctly explained by the Seventh Circuit in Homa. There, the Seventh Circuit was faced with the question of whether a district court had personal jurisdiction over two nonparty individuals who resided outside the territorial jurisdiction of the United States, but who had nevertheless knowingly violated an asset freeze order and actively aided and abetted a party in violating that order. In concluding that the district court properly exercised personal jurisdiction over the nonparties for purposes of contempt proceedings, the Seventh Circuit began by noting that "a court possesses

---

[6](...continued)
See 10th Cir. R. 28.2(C)(2).

the independent authority to enforce its own injunctive decrees." Id. at 673. "In this respect," the Seventh Circuit emphasized, "[Federal] Rule [of Civil Procedure] 65(d), which governs the contents and scope of injunctions, must be regarded as a codification rather than a limitation on a federal court's inherent power to protect its ability to render a binding judgment." Id. at 673-74. In turn, the Seventh Circuit noted that "the injunctive mandate of a federal court runs nationwide, and the issuing court has the authority to deal with defiance of its orders regardless of where that defiance occurs." Id. at 674. The Seventh Circuit further noted, citing Rule 65(d), that "an injunction binds not only the parties to the injunction but also nonparties who act with the named party." Id. "[I]f courts did not have the power to punish those who cooperate with those named in an injunction," the Seventh Circuit stated, "the named parties could easily thwart the injunction by operating through others." Id. Ultimately, the Seventh Circuit held that "a person who knowingly circumvents a freeze order is subject to a show cause order and contempt and thereby submits to the jurisdiction of the court for contempt proceedings . . . ." Id. "Jurisdiction over persons who knowingly violate a court's injunctive order," the Seventh Circuit emphasized, "even those without any other contact with the forum, is necessary to the proper enforcement and supervision of a court's injunctive authority and offends no precept of due process." Id. at 675 (internal quotation marks omitted).

The only contrary authority we have found is a 1989 decision from the

29

Second Circuit, <u>Canterbury Belts Ltd. v. Lane Walker Rudkin, Ltd.</u>, 869 F.2d 34 (2d Cir. 1989). In that case, the Second Circuit held that "[a] district court cannot exercise personal jurisdiction over a nonparty to a litigation," for purposes of civil contempt proceedings, "on the basis that the nonparty is acting 'in active concert or participation,' within the meaning of Fed. R. Civ. P. 65(d), with a party who is subject to an injunction, unless personal jurisdiction is established over the nonparty." <u>Id.</u> at 40. In our view, however, the Second Circuit arrived at this conclusion only by erroneously relying on one of its earlier decisions, i.e., <u>Heyman v. Kline</u>, 444 F.2d 65 (2d Cir. 1971). <u>Heyman</u> was distinguishable, both from <u>Canterbury</u> and the case at hand, because the nonparty at issue therein was not found to have acted in concert with the party in the case. 444 F.2d at 65-66. Consequently, and understandably, the <u>Heyman</u> court, in the absence of "active concert or participation" by the nonparty, required typical proof of personal jurisdiction over the nonparty.

Because we find the Seventh Circuit's analysis in <u>Homa</u> persuasive, we adopt its rule and hold that a district court may properly exercise personal jurisdiction over a nonparty for purposes of entering contempt orders, when the nonparty, with actual notice of an injunctive order issued by the district court, and in active concert or participation with a party, violates that order. Applying that rule to the facts presented in the instant appeal, we in turn conclude that the district court in this case properly exercised personal jurisdiction over Donald

30

Bowers for the purpose of entering contempt orders. The record on appeal firmly establishes that Donald Bowers had actual notice of the district court's injunctive orders. Further, the district court expressly found, and the record on appeal amply supports the district court's findings, that Donald Bowers, in active concert or participation with the WideBand defendants, particularly his son, Lonny Bowers, violated those injunctive orders. By doing so, Donald Bowers submitted himself to the district court's jurisdiction.[7]

*3) District court's July 17, 2009 order*

Donald Bowers contends that the district court's July 17, 2009 show cause order, which directed him to appear at the July 31, 2009 contempt hearing and outlined the parameters of that hearing, violated his due process rights because it "unequivocally denied [him] the opportunity to present evidence in support of his position and to counter opposing testimony and evidence [if] he did not attend the July 31, 2009 [contempt] hearing in person." Aplt. Br. at 60. "We review questions of constitutional law de novo." Citizens for Responsible Gov't State Political Action Comm. v. Davidson, 236 F.3d 1174, 1193 (10th Cir. 2000).

Donald Bowers argues that the July 17, 2009 order "was particularly

_____

[7] As part of his challenge to the district court's exercise of personal jurisdiction, Bowers also argues, citing Federal Rules of Civil Procedure 4.1(b) and 45, that the district court's July 17, 2009 show cause order was not properly served or binding upon him because he resided more than 100 miles outside of the District of Utah. Aplt. Br. at 49-51. We need not address this argument, however, because it was not raised below.

31

prejudicial [because] it did not take exigent circumstances into account." Aplt. Br. at 60-61. "For example," he argues, "there was no provision allowing [him] to present evidence and testimony in the event of travel difficulties, illness, or other unforeseen and uncontrollable circumstances." Id. at 61. He further complains that "[t]he matter was . . . compounded by the fact that the" district court, at the July 31, 2009 show cause hearing, relied "heavily upon a highly redacted affidavit and investigative report from an anonymous author." Id. at 61-62. "With no way to challenge ClearOne's witnesses' veracity and reliability or the accuracy of their findings," he argues, he "was, in effect, not so much participating in an evidentiary hearing as he was a summary proceeding, with all facts and conclusions being viewed in ClearOne's favor from beginning to end." Id. at 62-63.

As a threshold matter, we question whether any challenges to the July 17, 2009 show cause order have been rendered moot by the district court's issuance of the August 13, 2010 second amended permanent injunction, which added Donald Bowers as a person being enjoined, pursuant to the findings set forth in the district court's contempt order of that same date, id. at D23423-57. See Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308, 314 (1999) ("Generally, an appeal from the grant of a preliminary injunction becomes moot when the trial court enters a permanent injunction, because the former merges into the latter."); Smith v. Ill. Bell Tel. Co., 270 U.S. 587, 588

32

(1926) (holding that order granting preliminary injunction was not appealable because permanent injunction was subsequently granted and thus "the interlocutory injunction had become merged in the final decree").

Even assuming that Donald Bowers' challenges to the July 17, 2009 order have not been rendered moot, we conclude there is no merit to those challenges. "[A]t a minimum," the Due Process Clause "require[s] that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." Goss v. Lopez, 419 U.S. 565, 579 (1975). "The fundamental requisite of due process of law is the opportunity to be heard, a right that has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to . . . contest." Id. (internal quotation marks and citation omitted). In our view, the district court's July 17, 2009 show cause order satisfied these requirements by providing Donald Bowers with notice of the pending hearing on ClearOne's motion for contempt, and affording him the opportunity, at his discretion, to appear and be heard. Moreover, the district court's show cause order outlined, in clear fashion, the conditions under which Donald Bowers would be allowed to be heard.

Although Donald Bowers now complains that the district court's order was unfair, he failed to present these same objections to the district court prior to the July 31, 2009 hearing. Likewise, he failed to seek a continuance of the hearing. Thus, by failing to voice any objections or to seek a continuance, and in turn by

33

choosing to attend the hearing via telephone, Donald Bowers effectively accepted the terms outlined in the district court's show cause order.

In sum, we conclude that the district court's July 17, 2009 show cause order did not violate Donald Bowers' due process rights.

*4) District court's failure to recuse*

In his fourth and final issue on appeal, Donald Bowers contends that the district judge should have recused pursuant to 28 U.S.C. § 455 because her spouse was an attorney who "had a financial interest in the subject matter in controversy as well as an interest that could be substantially affected by the outcome of the proceedings . . . ."[8] Aplt. Br. at 64. Generally speaking, we review for abuse of

---

[8] Section 455 of Title 28 of the United States Code, entitled "Disqualification of justice, judge, or magistrate judge," provides, in pertinent part, as follows:

> (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
> (b) He shall also disqualify himself in the following circumstances:
> > * * *
> > (4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;
> > (5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:
> > > (I) Is a party to the proceeding, or an officer, director, or trustee of a party;
> > > (ii) Is acting as a lawyer in the proceeding;
> > > (iii) Is known by the judge to have an interest that could be substantially affected by the outcome of the

(continued...)

34

discretion the denial of a motion for recusal. <u>United States v. Mendoza</u>, 468 F.3d 1256, 1262 (10th Cir. 2006).

The issue of whether the district judge should have recused was first raised by defendant Lonny Bowers in his pro se motion for new trial. In that motion, Lonny Bowers argued that the district judge "knew that her spouse, Gordon Campbell, had a financial interest in the subject matter in controversy as well as an interest that could be substantially affected by the outcome of the proceedings within the meaning of § 455(b)(4)," and "in all likelihood knew that her husband had an interest that could be substantially affected by the outcome of the litigation in th[e] case within the meaning of § 455(b)(5)(iii) . . . ." JA at D17108. In support, Lonny Bowers alleged that Campbell was a "member" of the law firm "of Parsons, Behle & Latimer, . . . wh[ich] handle[d] a substantial portion of [ClearOne's] litigation caseload," and "ha[d] procured patents pertaining to key electronic systems at issue in th[e] litigation." <u>Id.</u> Lonny Bowers argued that, "had [the WideBand defendants] prevailed in th[e] litigation, Mr. Campbell's interest—and by extension [the district judge's] interest—in the company could have been substantially affected, particularly from an economic standpoint." <u>Id.</u> at D17108-09.

ClearOne, in its brief in opposition to Lonny Bowers' motion for new trial,

---

[8](...continued)
        proceeding . . . .
28 U.S.C. §§ 455(a), (b)(4) and (5).

35

refuted Lonny Bowers' allegations regarding Mr. Campbell:

> First, [Parsons, Behle & Latimer] is not counsel of record for ClearOne in this case, and has not otherwise been involved in the litigation.  Second, to the extent ClearOne has used, or currently uses, [Parsons, Behle & Latimer's] services for purposes outside of this litigation, [Mr.] Campbell has not worked, and does not work, for ClearOne.  Third, according to the publicly-available Internet resources, such as martindale.com, Mr. Campbell is neither an associate nor shareholder of [Parsons, Behle & Latimer], but is "of counsel."  As such, his financial interest in the firm, if any, is likely limited.  Moreover, there has been no evidence presented that would indicate that ClearOne's financial livelihood is in any way dependent on the outcome of this case.  Therefore, any financial interest held by any person in the viability of [Parsons, Behle & Latimer], and any decision whether ClearOne would use [Parsons, Behle & Latimer] for transactional work in the future, would have nothing to do, whatsoever, with whether ClearOne prevailed in this case.

Id. at D17430-31.  Lonny Bowers did not file a reply to ClearOne's opposition brief.

The district court ultimately rejected Lonny Bowers' arguments in an order and memorandum and decision issued on April 20, 2009.  Id. at D17547.  In doing so, the district court stated, in pertinent part: "Mr. [Lonny] Bowers . . . alleges that the court had an improper personal financial interest in the outcome of the trial.  His allegations are not supported by the evidence or law."  Id. at D17566.

At the June 3, 2009 show cause hearing, Donald Bowers orally moved for the district judge to recuse, citing the same reasons asserted in Lonny Bowers' motion for new trial.  The district court summarily denied Donald Bowers' oral motion.

36

On appeal, Donald Bowers makes no attempt to explain how the district court abused its discretion in declining to recuse. Instead, Donald Bowers' opening brief simply repeats, in almost identically worded form, the arguments that were asserted by Lonny Bowers in his pro se motion for new trial, and that were directly refuted by ClearOne in its opposition to that motion. Moreover, Donald Bowers' counsel conceded at oral argument that, contrary to the assertions made below and in Donald Bowers' opening brief, Mr. Campbell was not a partner in the firm of Parsons, Behle & Latimer, but rather was of counsel to that firm. Donald Bowers' counsel likewise conceded that Donald Bowers had no evidentiary support for the allegations that Mr. Campbell, and in turn the district judge, had a financial interest in the subject matter in controversy, or an interest that could have been substantially affected by the outcome of this litigation.

We conclude that these concessions effectively dispose of the question of whether there was an actual conflict of interest that would have required the district judge's recusal under § 455(b). We further conclude, based upon the combination of these concessions and the lack of any other factors suggesting partiality concerns arising from Mr. Campbell's employment, that recusal was not required under § 455(a). Thus, in sum, we conclude the district court did not abuse its discretion in denying the pro se motion of Donald Bowers.

AFFIRMED.