**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 12, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

LATISHA SANCHEZ, co-administratrix
of the estate of Debra Dyann Standage,
deceased, and parent and next friend for
I.S., a minor; APRIL MINA, co-
administratrix of the estate of Debra Dyann
Standage, deceased,

     Plaintiffs - Appellants,

v.

WHITE COUNTY MEDICAL CENTER,
an Arkansas corporation, a/k/a Family
Practice Associates; CE RANSOM, JR.,

     Defendants - Appellees.

No. 16-5154
(D.C. No. 4:15-CV-00719-JHP-FHM)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **LUCERO**, **McKAY**, and **McHUGH**, Circuit Judges.
_____

Latisha Sanchez and April Mina appeal the district court's dismissal of their

negligence claim against White County Medical Center ("WCMC") and Dr. C.E.

Ransom, Jr. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

_____

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# I

This case arises from a motor vehicle accident that occurred on August 5, 2013, near New Mannford in Creek County, Oklahoma. According to plaintiffs' complaint, one vehicle was operated by Debra Standage. At the time of the accident, Standage was accompanied by her grandson, referred to by the parties as I.S., as well as a family friend. The other vehicle was operated by Eric Goodwin, who was acting in the course and scope of his employment at Total Assessment Solutions Corporation ("TASC"). Sometime after May 10, 2013, Goodwin moved from Arkansas to Oklahoma in connection with his employment at TASC.

On behalf of Standage and I.S., Sanchez and Molina brought a negligence action against Goodwin and TASC in Oklahoma state court. Goodwin and TASC then asserted a third-party claim against WCMC and Ransom, alleging that Goodwin was negligently prescribed a generic medication for his high blood pressure, which caused the accident. In an amended pleading, plaintiffs asserted a direct claim against WCMC and Ransom. The Oklahoma Supreme Court issued a writ limiting discovery to jurisdictional issues. Plaintiffs then dismissed their state court action without prejudice.

Sanchez and Molina then initiated the present action in federal court, pursuing negligence claims against TASC, WCMC, and Ransom. Plaintiffs settled with TASC. WCMC and Ransom filed a motion to dismiss, which the district court granted on four independent grounds: lack of personal jurisdiction, failure to state a

claim upon which relief may be granted, lack of standing, and failure to join an indispensable party. This timely appeal followed.

## II

We limit our analysis to the question of personal jurisdiction, which we review de novo. ClearOne Commc'ns, Inc. v. Bowers, 651 F.3d 1200, 1214 (10th Cir. 2011). A federal district court may exercise jurisdiction over a properly served defendant "who is subject to the jurisdiction of a court of general jurisdiction where the district court is located." Fed. R. Civ. P. 4(k)(1)(A). Oklahoma's long-arm statute provides that an Oklahoma court "may exercise jurisdiction on any basis consistent with the Constitution of this state and the Constitution of the United States." Okla. Stat. tit. 12, § 2004(F). Because "[n]o party has argued any state constitutional objection," the relevant inquiry on appeal is "whether the United States Constitution places any limits on Oklahoma's ability to exercise jurisdiction" over WCMC and Ransom. Newsome v. Gallacher, 722 F.3d 1257, 1264 (10th Cir. 2013).

Accordingly, we turn to the federal constitutional limitations imposed on Oklahoma's exercise of specific jurisdiction[1] over non-resident defendants. Fundamental principles of due process require that a defendant "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quotation omitted). These minimum contacts

---

[1] Because the parties appear to agree that Oklahoma may not exercise general jurisdiction over WCMC and Ransom—as do we—we limit our analysis to specific jurisdiction. See Niemi v. Lasshofer, 770 F.3d 1331, 1348 (10th Cir. 2014).

3

must evince a "substantial connection" with the forum state. <u>McGee v. Int'l Life Ins. Co.</u>, 355 U.S. 220, 223 (1957). "Jurisdiction is proper . . . where the contacts proximately result from actions by the defendant [] that create a substantial connection with the forum State." <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 475 (1985) (quotation and emphasis omitted). "The substantial connection between the defendant and the forum State necessary for a finding of minimum contacts must come about by an action of the defendant purposefully directed toward the forum State." <u>Asahi Metal Indus. Co. v. Super. Ct. of Cal.</u>, 480 U.S. 102, 112 (1987) (quotation, citation, and emphasis omitted).

We conclude that Oklahoma's exercise of personal jurisdiction over WCMC and Ransom in this action fails to comply with due process. WCMC is an Arkansas corporation that maintains a clinic in Searcy, Arkansas. Limited discovery on jurisdictional issues revealed that WCMC provides healthcare services exclusively in Arkansas, does not seek to render healthcare services in Oklahoma, does not advertise in Oklahoma, and does not have any business or ownership interests in Oklahoma. Similarly, Ransom practices medicine exclusively in Arkansas, does not seek to practice medicine in Oklahoma, and does not have business or ownership interests in Oklahoma. Goodwin established a physician-patient relationship with Ransom while they were both residents of Arkansas. Goodwin's last appointment with Ransom was at WCMC on May 10, 2013, at which time Goodwin identified himself as an Arkansas resident.

4

As the Supreme Court has explained, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958).  Defendants' sole connection with Oklahoma is that Goodwin, by then an Oklahoma resident, contacted WCMC and requested a prescription for a generic drug to replace the brand-name drug he was originally prescribed.  Ransom revised the prescription as requested in Arkansas.  WCMC then forwarded the new prescription to a drugstore in Oklahoma pursuant to Goodwin's instructions.  These facts do not demonstrate that defendants purposefully directed their activities to Oklahoma or purposefully availed themselves of the privilege of conducting activities in that state.

Plaintiffs' reliance on Kennedy v. Freeman, 919 F.2d 126 (10th Cir. 1990), is misplaced.  In that case, an Oklahoma resident brought an action against a Texas physician for the negligent diagnosis and analysis of a skin lesion.  Id. at 127.  We described the connection between Oklahoma and the non-resident defendant as follows:

> Marsha Kennedy, a resident of Oklahoma, sought medical advice in 1982 from her physician, Dr. Dosser, because of a "mole" on her thigh. Dosser removed the lesion and sent it from his office in Oklahoma to Freeman in Dallas, Texas, for a special measurement.  Freeman willingly accepted the sample.  He measured the sample and sent a report to Dosser indicating the thickness of the lesion, expecting that it would be used in the treatment of Kennedy.  Freeman also evidently sent his bill to Oklahoma.

5

Id. Holding that Freeman's actions were sufficient to establish jurisdiction, we reasoned that although "Freeman did not solicit Kennedy's business in Oklahoma, he did purposefully direct his actions there" by: (1) "willingly accept[ing] the sample from Oklahoma"; (2) "sign[ing] a report establishing the thickness of the lesion"; (3) "sen[ding] his bill" to Oklahoma; and (4) "render[ing] his diagnosis to Kennedy in Oklahoma, through the mail, knowing its extreme significance and that it would be the basis of Kennedy's further treatment there." Id. at 129. We summarized that "when a doctor purposefully directs her activities at the forum state, that state has a greater interest in deterring medical malpractice against its residents." Id.

Unlike the situation in Kennedy, in which an out-of-state physician deliberately rendered services to an in-state patient through the mail, this case involves out-of-state medical providers rendering services to a patient who was primarily out-of-state during the course of his treatment. In contrast to the interaction between Kennedy and Freeman, Goodwin had a preexisting and longstanding relationship with WCMC and Ransom for his medical and healthcare services.[2] And although plaintiffs alleged in briefing before the district court and this court that WCMC and Ransom were aware that Goodwin had moved to Oklahoma at the time the revised prescription was sent, defendants presented affidavits stating that WCMC was not aware that Goodwin had permanently moved to Oklahoma, and

_____

[2] Goodwin was an Arkansas citizen and a patient of Ransom from 1977 to May 10, 2013, and of WCMC from January 2012 to May 10, 2013.

6

Ransom was not aware that Goodwin was in Oklahoma at the time the prescription was revised.[3]

"Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the random, fortuitous, or attenuated contacts he makes by interacting with other persons affiliated with the State." Walden v. Fiore, 134 S. Ct. 1115, 1123 (2014) (quotation omitted). It was Goodwin who decided to move to Oklahoma and then requested a change in the medication originally prescribed in Arkansas. This "unilateral activity" on Goodwin's part cannot satisfy the Due Process Clause's requirement of contact between the defendants and Oklahoma. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 298 (1980) (quotation omitted).

## III

**AFFIRMED**.

Entered for the Court

Carlos F. Lucero
Circuit Judge

---

[3] For the purposes of evaluating a defendant's contacts with the forum, plaintiffs' allegations "must be taken as true to the extent they are uncontroverted by the defendant's affidavits." Behagen v. Amateur Basketball Ass'n of U.S.A., 744 F.2d 731, 733 (10th Cir. 1984). Because defendants submitted affidavits stating that they were not aware that Goodwin had moved to Oklahoma, and plaintiffs did not present an affidavit bolstering their factual averment to the contrary, we need not construe this dispute in plaintiffs' favor. See id. ("If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor.").