FILED
United States Court of Appeals
Tenth Circuit

February 10, 2017

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

DONALD BOWERS,

      Defendant - Appellant.

No. 16-4008

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. No. 2:13-CR-00413-DB-BCW-2)

---

Submitted on the briefs:[*]

Stephen R. McCaughey, Attorney at Law, Salt Lake City, Utah, for Defendant-Appellant.

John W. Huber, United States Attorney, District of Utah; Jason R. Burt, Assistant United States Attorney, Salt Lake City, Utah, for Plaintiff-Appellee.

---

Before **BRISCOE**, **MATHESON** and **PHILLIPS**, Circuit Judges.

---

**BRISCOE**, Circuit Judge.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is, therefore, submitted without oral argument.

Defendant Donald Bowers was previously involved in a civil trade secret misappropriation case that was litigated in the United States District Court for the District of Utah. During the course of that litigation, Bowers willfully and repeatedly violated a permanent injunction issued by the district court presiding over the case, and also refused to purge himself of civil contempt. His actions resulted in findings of civil contempt against him, judgments against him for the plaintiff's attorneys' fees, and, ultimately, a criminal referral to the United States Attorney for the District of Utah. A federal grand jury subsequently indicted Bowers on two counts of contempt, in violation of 18 U.S.C. § 401(3). The case proceeded to trial, where a jury found Bowers guilty of both counts. Bowers was sentenced to a term of imprisonment of fifteen months, to be followed by a thirty-six month term of supervised release. He was also directed, as a condition of supervised release, to make monthly payments on the outstanding amount owed by him to the plaintiff in the underlying civil case.

Bowers now appeals, arguing that the district court erred in (1) imposing a special condition of supervised release requiring him to make monthly payments on the outstanding judgments owed to the plaintiff in the civil case, (2) denying his motion for disclosure of the criminal referral, and (3) sentencing him to a term of imprisonment that exceeded six months. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm in all respects.

I

This criminal case has roots in an earlier civil case, ClearOne Communications,

2

Inc. v. Bowers, 643 F.3d 735 (10th Cir. 2011) (Bowers I). The complete factual and procedural history of that civil case is detailed in Bowers I and will not be repeated here. Instead, we proceed to outline only the facts necessary to understand how the criminal charges arose against Bowers.

*The filing of ClearOne's lawsuit against the WideBand defendants*

In early 2007, ClearOne Communications, Inc. (ClearOne) filed suit in Utah state court seeking relief for alleged misappropriation of its trade secrets. Those trade secrets, which ClearOne put to use in audio teleconferencing equipment, "allegedly included an acoustic echo cancellation algorithm and sub-algorithms, in both source and object code form, nicknamed the Honeybee Code." ClearOne Commc'ns, Inc. v. Bowers, 651 F.3d 1200, 1203 n.1 (10th Cir. 2011) (Bowers II). Ultimately named as defendants in the suit were WideBand Solutions, Inc. (WideBand), which was a Massachusetts corporation, and Andrew Chiang, Jun Yang, and Lonny Bowers (hereinafter Lonny), all of whom served as officers of WideBand. Collectively, these defendants will be referred to as the WideBand defendants. ClearOne's lawsuit also named two additional corporations: Versatile DSP, Inc., and Biamp Systems (Biamp). "Chiang, Yang and WideBand removed the case to federal district court [in Utah] on the basis of diversity jurisdiction."[1] Bowers I, 643 F.3d at 744.

*Donald Bowers' initial involvement in the lawsuit*

The defendant in the instant case, Bowers, is the father of Lonny. After ClearOne

---

[1] The action was assigned the following case number: 2:07-cv-00037-TC.

3

initiated its lawsuit against the WideBand defendants, Bowers began "loaning money to the WideBand defendants to pay a portion of the legal fees they were incurring." Bowers II, 651 F.3d at 1203. Further, in June 2008, "Bowers and a Georgia-based company he founded called WideBand Solutions, Inc. (WideBand Georgia), entered into an agreement with" the WideBand defendants "pursuant to which WideBand would transfer its assets to WideBand Georgia." Id. "ClearOne, upon learning of the asset transfer agreement, filed a motion for a temporary restraining order (TRO) and preliminary injunction to prevent any transfer of its alleged trade secrets." Id. at 1204.

"The district court held a hearing on ClearOne's motion on June 18, 2008, during which attorney Randolph Frails appeared by telephone as the legal representative for . . . Bowers." Id. "Frails represented during the hearing that the language of the asset transfer agreement excluded the trade secrets that the WideBand defendants had purportedly misappropriated from ClearOne." Id. "Nevertheless, the district court ordered Frails and . . . Bowers to provide counsel for ClearOne and the WideBand defendants with copies of the asset transfer agreement." Id.

On "June 19, 2008, ClearOne filed a renewed motion for a TRO and preliminary injunction alleging that, contrary to Frails' representations, the terms of the asset transfer agreement included WideBand's intellectual property, most notably the Honeybee Code." Id. "ClearOne that same day also filed with the district court a separate lawsuit against WideBand Georgia and . . . Bowers alleging fraudulent transfer." Id. (citing ClearOne Commc'ns, Inc. v. WideBand Sols., Inc., No. 2:08–CV–00474–TS (D. Utah June 19,

4

2008)).

On June 26, 2008, the district court held a hearing "to address the asset transfer agreement." Id. "Frails again appeared by telephone on behalf of . . . Bowers and WideBand Georgia." Id. "During the hearing, the district court issued a TRO prohibiting the WideBand defendants from transferring the Honeybee Code." Id. The district court also, as part of its TRO, "expressly prohibited the transfer of any related items, including all of the various codes that Yang had allegedly derived from the Honeybee Code while working for WideBand, and it directed the WideBand defendants to make a full disclosure and production of all documents relating to the asset transfer agreement." Id.

"On July 10, 2008, the district court, prompted by another TRO motion filed by ClearOne, held a . . . hearing concerning the asset transfer agreement." Id. Frails appeared by telephone on behalf of Bowers and WideBand Georgia, and stated that the asset purchase agreement had been rescinded because Bowers "felt that he was buying nothing." Id. (internal quotation marks omitted). "Frails argued that ClearOne's TRO motion was moot because no assets had been transferred and the asset transfer agreement had been rescinded." Id. The district court, relying on Frails' representations, "denied ClearOne's TRO motion as moot." Id.

"In October 2008, the district court granted . . . Bowers' motion to dismiss ClearOne's case against him and WideBand Georgia without prejudice on the basis that the claims, all of which concerned the purportedly rescinded asset transfer agreement, were moot." Id. at 1205.

5

*The trial of ClearOne's case against the WideBand defendants*

ClearOne's case against the WideBand defendants ultimately proceeded to trial in October 2008. "After hearing eleven days of evidence, the jury returned a special verdict finding in favor of ClearOne on each of its claims against the defendants." Bowers I, 643 F.3d at 745. The verdict included substantial compensatory damages against all of the defendants, as well as punitive damages against Chiang and Yang. Id. (detailing the damages award).

*Donald Bowers' reemergence in the case*

"On January 16, 2009, ClearOne filed a motion for an order to show cause why the WideBand defendants and . . . Bowers should not be held in contempt of the district court's June 26, 2008 TRO." Bowers II, 651 F.3d at 1205. In support of its motion, ClearOne alleged that on November 6, 2008, the day after the jury returned its verdict in ClearOne's case against the WideBand defendants, Bowers filed a statement in Massachusetts purporting to perfect a security interest in all of WideBand's assets, including all of its software and intellectual property, pursuant to Article 9 of the Uniform Commercial Code. Id.

"On January 26, 2009, the district court issued an order to show cause directing the WideBand defendants and . . . Bowers to appear before the court on February 10, 2009, and show cause why they should not be held in contempt for the reasons alleged in ClearOne's motion." Id. Although the evidence indicated that Bowers was properly served with the district court's show cause order, he "failed to appear at the February 10,

2009 show cause hearing." Id.

On February 24, 2009, the district court issued a written order concluding that Bowers was effectively subject to the district court's June 26, 2008 TRO because he had acted in concert or participation with the WideBand defendants. Id. The district court also found that on November 6, 2008, Bowers had filed a UCC statement in Massachusetts listing WideBand as a debtor and describing the relevant collateral as all of WideBand's assets, including its intellectual property. Id. Despite these findings and conclusions, however, the district court "'continued' the issue of whether Bowers should be held in contempt of the district court's June 26, 2008 TRO, and directed Bowers to appear in person before the court on March 13, 2009, 'to show cause why [he] should not be held in contempt for violating the June 26, 2008 Order.'" Id. (citation omitted). "On March 5, 2009, the district court vacated its February 24, 2009 show cause order and ordered that a show cause hearing regarding . . . Bowers would be rescheduled at a future date." Id.

*The permanent injunction*

"On April 9, 2009, the district court issued a permanent injunction against all of the defendants." Bowers I, 643 F.3d at 745. The injunction permanently enjoined the WideBand defendants from disclosing, using or transferring in any way ClearOne's trade secret Honeybee Code, as well as "product development documentation for the Honeybee Code or any other documentation that reveal[ed] the contents of the Honeybee Code." Id. (internal quotation marks omitted). The injunction also prohibited the WideBand

7

defendants from marketing, selling, manufacturing, developing, modifying, duplicating, transporting or delivering any technology that contained the Honeybee Code or any product that was substantially derived from the Honeybee Code. Id. at 745–46.

*Continued contempt proceedings against Donald Bowers*

"On April 28, 2009, the district court issued an order rescheduling for June 3, 2009, the show cause hearing regarding . . . Bowers." Bowers II, 651 F.3d at 1206. "In its order, the district court directed both . . . Bowers and . . . Frails to appear and testify by telephone at the June 3, 2009 hearing." Id. Both men "appeared by telephone at the June 3, 2009 hearing." Id. At the conclusion of the hearing, the district court "took the matter of . . . Bowers' contempt under advisement." Id.

Three months later, on September 3, 2009, the district court issued a memorandum decision and order of contempt based on the evidence presented at the June 3, 2009 show cause hearing. Id. at 1207. The district court specifically found "Bowers in contempt for the post-verdict act of filing a UCC financing statement encumbering WideBand's assets, as well as for failing to appear at the February 10, 2009 contempt hearing." Id. "Based on these findings, the district court directed . . . Bowers to take actions to assure the court that he had removed any encumbrances he had placed on WideBand's assets and to pay ClearOne's attorneys' fees and costs associated with the contempt proceedings against him." Id.

"On September 17, 2009, . . . Bowers filed a personal Chapter 7 bankruptcy petition in Georgia." Id. "The automatic stay entered in connection with the filing of that

8

bankruptcy petition prevented ClearOne from collecting on the contempt judgment for fees and costs and prevented, for a period of time, the district court's consideration of ClearOne's subsequent allegations that . . . Bowers was committing additional contemptuous acts." Id.

*Violation of the permanent injunction and issuance of a TRO*

"On July 16, 2009, ClearOne moved to enforce the permanent injunction and for contempt." Bowers I, 643 F.3d at 746–47. In support of its motion, ClearOne alleged that the defendants had transferred the assets of WideBand to a new, sham company called DialHD, Inc. (DialHD). Id. at 747. According to ClearOne, DialHD was registered to Bowers, was operating out of the same Connecticut office that WideBand previously occupied, and was continuing the same business as WideBand, including selling products that incorporated the Honeybee Code. Id. ClearOne also alleged that the defendants, Bowers, "and WideBand employee David Sullivan ha[d] conspired and transferred, hidden, and claimed to destroy, the very Wide[B]and assets that th[e] Court ordered to be preserved in at least three orders, in addition to the Permanent Injunction." Id. (internal quotation marks omitted) (brackets in original).

On July 17, 2009, the district court issued a show cause order directing the WideBand defendants, Bowers, DialHD, and David Sullivan to appear before the court on July 31, 2009. At the show cause hearing, the WideBand defendants and Bowers appeared on their own behalf by telephone. The district court heard testimony from three ClearOne witnesses and received exhibits submitted by ClearOne. At the conclusion of

9

the hearing, the district court issued a TRO in favor of ClearOne.

On August 5, 2009, the district court issued a written TRO memorializing its findings and conclusions. The district court found that ClearOne had established a substantial likelihood of success on the merits of its claim that certain DialHD products illegally utilized the Honeybee Code. Id. at 747–48. Accordingly, the district court held that the DialHD infringing products would be subject to the same restrictions as set forth in the permanent injunction order regarding WideBand's infringing products. Id. at 748. The district court also ordered Bowers and DialHD not to transfer, encumber, pledge, alienate, or try to dispose of or hide any DialHD assets until further order of the court. Id.

*Violation of the TRO and issuance of a contempt order*

"On October 22, 2009, ClearOne moved for an order to show cause for violation of the August 5, 2009 TRO." Bowers II, 651 F.3d at 1207. ClearOne alleged in its motion that the WideBand defendants, DialHD, Sullivan and Bowers "had failed to remove from the market certain offending products, and that a sham Chinese company was utilizing the Honeybee Code to manufacture offending products for DialHD." Id.

The district court held a hearing on ClearOne's motion on November 9, 2009. Id. Ten days later, on November 19, 2009, the district court issued an order finding Lonny Bowers, Yang, WideBand and DialHD in contempt of court for selling a WideBand offending product in the guise of two DialHD products, and that all of these products contained the Honeybee Code. Id. The district court's order did not include Bowers because, at that time, the automatic stay issued in connection with his Chapter 7

10

bankruptcy proceedings had not yet been lifted.

The district court also, in pertinent part, (a) expanded its TRO and permanent injunction to include the offending DialHD products using the Honeybee Code, (b) directed DialHD and all those working in connection with it to immediately halt all development, sale and marketing of all DialHD products, including in China, and (c) directed the contemnors to arrange for delivery to ClearOne of all code and other design materials and intellectual property covered by the permanent injunction and TRO. Bowers I, 643 F.3d at 749.

*Additional contempt proceedings*

"On February 11, 2010, ClearOne filed an ex parte motion for the addition of . . . Bowers to the district court's November 19, 2009 contempt order and amended permanent injunction." Id. ClearOne alleged in support "that on December 29, 2009, the bankruptcy court overseeing . . . Bowers' Chapter 7 bankruptcy proceedings 'lifted the automatic stay, specifically to allow the contempt proceedings against . . . Bowers to go forward.'" Id. (citation omitted). "The district court denied ClearOne's motion, but issued a show cause order on April 7, 2010 directing . . . Bowers to 'appear personally or through counsel before the court on . . . May 27, 2010[,] . . . to show cause . . . why he should not be held in contempt of the court's August 5, 2009 TRO." Id.

The district court held the scheduled show cause hearing on May 27, 2010. Id. Bowers appeared by counsel at the hearing, but did not personally attend. Id. The district court subsequently issued a memorandum decision and civil contempt order on August

11

13, 2010. Id. The district court found "Bowers 'in contempt of court for his acts violating the court's prohibition on possession, disclosure, use, marketing, or selling products containing ClearOne's stolen trade secrets and the court's prohibition on diversion of Defendant WideBand['s] . . . assets.'" Id. (citation omitted) "More specifically, the district court found that . . . Bowers 'surreptitiously re-packag[ed] and s[old] products containing the stolen trade secret' and 'participated in the diversion of WideBand['s] . . . assets in an attempt to avoid the WideBand Defendants' obligation to pay a multi-million dollar judgment to ClearOne.'" Id. (citation omitted). The district court also "found that . . . Bowers 'ha[d] committed fraud on the court by making false statements to the court and withholding material information from the court in a manner obstructing the court's ability to enforce its orders and final judgment against the WideBand Defendants.'" Id. at 750 (citation omitted).

Based upon these findings, the district court (a) expanded its August 5, 2009 TRO to expressly include Bowers, (b) modified its amended permanent injunction to reflect these findings, (c) directed Bowers, and all those working in active concert or participation with him, to immediately halt all development, sales, and/or marketing of all DialHD products, including in China, (d) directed Bowers to deliver to ClearOne or its designated agent all code and other design materials and intellectual property covered by the amended permanent injunction, (e) directed Bowers to self-surrender to the court on October 13, 2010, for incarceration unless and until he proved that he had complied with the court's directives, and (f) directed Bowers to pay ClearOne's reasonable attorneys'

12

fees and costs in pursuing the contempt order against him.  Id.

"On that same date, August 13, 2010, the district court also issued a second amended permanent injunction against all of the defendants in the case, as well as . . . Bowers."  Id.  The injunction prohibited Bowers and the defendants

> from disclosing, using or transferring in any way the . . . Honeybee Code (including its unique algorithms or sub-algorithms that [we]re not in the public domain), whether in the form of source code, object code, or any other form, and any code or product substantially derived from the Honeybee Code, as well as from disclosing, using, or transferring in any way the product development documentation for the Honeybee Code or any other documentation that reveal[ed] the contents of the Honeybee Code.

Id. (quotation marks omitted).

"On October 13, 2010, the district court held a hearing to determine whether . . . Bowers 'had purged himself of contempt by disclosing and providing [the] specified information and infringing products.'"  Id. (citation omitted).  Bowers did not appear at the hearing despite being ordered to do so by the district court.  At the conclusion of the hearing, "the district court found 'that . . . Bowers ha[d] not purged himself of contempt and [wa]s subject to arrest and incarceration in an attempt to coerce his compliance with the court's Contempt Order.'"  Id. (citation omitted).  "Consequently, that same day the district court issued a bench warrant for . . . Bowers for failure to appear before the court."  Id.

*Bowers' civil appeals*

In Bowers I, Bowers challenged the district court's exercise of personal jurisdiction over him.  More specifically, he argued "that the district court could not have

properly exerted personal jurisdiction over [hi]m at the July 31, 2009 contempt hearing because ClearOne had never filed 'an actual complaint' against [hi]m." Id. at 775. This court rejected that argument, concluding that Bowers was "subject to the district court's orders because [he] had actual notice of the district court's original permanent injunction and wa[s] found by the district court to have acted in concert with the WideBand defendants in violating that injunction." Id. at 776.

In Bowers II, Bowers appealed from the district court's contempt orders, arguing that the district court erred (1) in holding him in contempt of its injunctive orders, (2) in determining that it could exercise personal jurisdiction over him, (3) in directing him to appear in person at the July 31, 2009 show cause hearing, and in turn denying him the opportunity to present evidence and cross-examine ClearOne's witnesses due to his failure to appear at that hearing, and (4) in refusing to recuse itself from the case filed by ClearOne. This court rejected Bowers' arguments and affirmed the district court's contempt orders. Bowers II, 651 F.3d at 1203, 1219.

*Summary of the civil judgments entered against Donald Bowers*

On April 21, 2010, the district court entered a civil judgment ordering Bowers to pay ClearOne $57,188.61 in attorneys' fees. This judgment was the result of the district court's September 3, 2009 order holding Bowers in civil contempt for violating its pretrial order enjoining the encumbrance or transfer of the Honeybee Code.

On December 8, 2011, the district court entered a civil judgment ordering Bowers to pay ClearOne costs and fees totaling $207,250.40 (of this amount, Bowers was

14

personally liable for $22,743.88 and jointly and severally liable with other civil case defendants for $184,506.52). This judgment was the result of the district court's August 13, 2010 order finding Bowers in civil contempt for his role in violating the permanent injunction prohibiting any further use of the Honeybee Code and products that unlawfully incorporated the Honeybee Code.

On May 13, 2013, the district court entered a civil judgment ordering Bowers to pay ClearOne $8,648 in appellate attorneys' fees in connection with the appeal in Bowers I.

According to the record in this case, those judgments remain unpaid.

*The criminal referral*

On December 2, 2010, the district court judge who presided over the civil proceedings sent to the United States Attorney for the District of Utah a memo titled "Referral of Criminal Contempt Proceedings Against Lonny Bowers, Donald Bowers, and Jun Yang under Fed. R. Crim. P. 42." Supp. ROA, Vol. 3 (Memo at 1). The memo outlined what had transpired in the civil case and asserted that the conduct of Bowers, Lonny and Yang had prevented the district court from providing effective relief to ClearOne and threatened to undermine the autonomy and effectiveness of the federal court system. The memo outlined the elements of a criminal contempt charge and expressed the district judge's belief that those elements were satisfied. Ultimately, however, the memo acknowledged that the decision whether to criminally prosecute the three individuals was a discretionary one to be made solely by the United States

15

Attorney's office.

II

The criminal proceedings at issue in this appeal were initiated on June 5, 2013, when a federal grand jury returned a four-count indictment against Bowers, Lonny Bowers, and Yang. As relevant to this appeal, Count 1 of the indictment charged all three defendants with willfully disobeying the district court's April 2009 permanent injunction order, in violation of 18 U.S.C. § 401(3). Count 4 of the indictment charged Bowers with willfully disobeying the district court's August 13, 2010 civil contempt order, also in violation of 18 U.S.C. § 401(3).

On March 13, 2015, Bowers, through counsel, filed a motion asking the district court to compel the government to provide him with "a copy of the criminal referral" made by the district court judge who presided over the civil proceedings. ROA, Vol. 4 at 81. On June 12, 2015, Bowers filed a similar pleading again seeking disclosure of the criminal referral. Bowers argued in that pleading that "the criminal referral [wa]s in the nature of a police report or written complaint and [he] [wa]s entitled to a copy of that referral." ROA, Vol. 5 at 74. Bowers also argued that "[d]ue process and fundamental fairness require[d] that [he] receive a copy of that referral." Id. The district court denied Bowers' motions in an oral ruling issued on June 18, 2015. On July 13, 2015, the district court issued a written order memorializing its ruling.

The case proceeded to trial on September 21, 2015. The jury, after hearing three days of testimony, found Bowers guilty of Counts 1 and 4 as charged in the indictment.

16

On December 10, 2015, the district court sentenced Bowers to a term of imprisonment of fifteen months, to be followed by a three-year term of supervised release. The district court also ordered Bowers, as a condition of his term of supervised release, to make monthly payments to ClearOne on the outstanding civil judgments, with the monthly payment amount subject to review by the probation office.

The district court entered final judgment on January 11, 2016. The final judgment memorialized and effectively revised the special condition of supervised release imposed by the district court:

> The defendant shall pay any civil obligations to ClearOne . . . as ordered in civil case 2:07-cv-00037[–]TC at a minimum rate of $200 a month or as directed by the probation officer.

ROA, Vol. 6 at 584. Bowers filed a notice of appeal on January 12, 2016.

On March 28, 2016, the district court entered an amended judgment in order to remove an entry in the original judgment that erroneously directed Bowers to pay a certain amount of restitution to ClearOne. On April 1, 2016, Bowers filed an objection to the amended judgment, arguing for the first time that the district court lacked "jurisdiction to order [him] to pay obligations owed to Clear One stemming from civil case 2:07-cv-00037[–]TC, in that he was not a party to that case and that there [wa]s no other basis to require [him] to pay the money ordered." Supp. ROA, Vol. 1 at 1. Bowers asked the district court to delete this special condition of supervised release from the amended judgment. Bowers also filed an amended notice of appeal on April 8, 2016.

On June 21, 2016, the district court issued an order overruling Bowers' objection

17

to the amended judgment. In its order, the district court noted that at the time of sentencing it "explained that . . . Bowers would be required to pay down his civil judgment as a condition of his supervised release." Supp. ROA, Vol. 2 at 1. The district court also noted that the probation office "received the specific amount relating to . . . Bowers' outstanding judgments owed to ClearOne based on his conduct during the [civil] litigation." Id. Lastly, the district court noted that it exercised its discretion to require Bowers "to pay those judgments, at the rate of $200 a month, as a special condition of supervised release," and that "[t]his special condition did not involve a greater deprivation of liberty than reasonably necessary, . . . was consistent with pertinent policy statements of the Sentencing Commission, and was reasonably related to the factors outlined in 18 U.S.C. §§ 3553(a) and 3583(d)." Id. at 2.

### III

Bowers asserts three issues in this appeal. First, he argues that the district court abused its discretion by ordering him, as a special condition of supervised release, to make monthly payments to ClearOne. Second, he argues that the district court abused its discretion by denying his motion to compel the government to disclose the criminal referral. Third, he argues that his sentence is illegal because 18 U.S.C. § 402 limits sentences for crimes such as those he committed to no more than six months. As we discuss in greater detail below, all of these issues lack merit.

*Challenge to condition of supervised release*

In his first issue on appeal, Bowers challenges the special condition of supervised

release imposed by the district court that requires him to pay any civil obligations to ClearOne at a rate of $200 per month or as otherwise directed by his probation officer. According to Bowers, "it appears that the district court was under the *mistaken belief* that there was a 'verdict' and a judgment in the underlying civil case *against Donald Bowers* that he 'needed to pay.'" Aplt. Br. at 20. Although Bowers concedes that it is "appropriate for a court to order, as part of a condition for supervised release, that a defendant make payments as ordered by another court," he argues that "the problem here is that [he] was not a litigant in the underlying civil case and there was never any civil verdict or judgment against him." Id. at 20–21. In sum, Bowers argues that he "was never a party to the [civil] matter, the court ordered no civil obligations to be paid by him, and therefore, it is inappropriate for the district court [in this case] to now order [him] . . . to pay on a civil obligation for which he was not found liable or been otherwise ordered [to pay]." Id.

We review the imposition of a special condition of supervised release for an abuse of discretion. United States v. Munoz, 812 F.3d 809, 817 (10th Cir. 2016). Notably, we have held that "[d]istrict courts have broad discretion to impose special conditions of supervised release." United States v. Bear, 769 F.3d 1221, 1226 (10th Cir. 2014). As we noted In Bear,

> [t]he limits of that discretion are prescribed by 18 U.S.C. § 3583(d), which requires the conditions (1) be reasonably related to the nature and circumstances of the offense, the defendant's history and characteristics, the deterrence of criminal conduct, the protection of the public from further crimes of the defendant, or the defendant's educational, vocational,

19

medical, or other correctional needs; (2) involve no greater deprivation of liberty than is reasonably necessary to achieve the purpose of deterring criminal activity, protecting the public, and promoting the defendant's rehabilitation; and (3) be consistent with any pertinent policy statements issued by the Sentencing Commission.

Id.

The central premise of Bowers' challenge to the special condition imposed upon him—that the district court in the civil action never ordered any civil obligations to be paid by him—is patently false. In fact, the district court in the civil action (Case No. 2:07-cv-00037-TC) entered three separate judgments against Bowers and in favor of ClearOne: (1) the April 21, 2010 judgment for $57,188.61; (2) the December 8, 2011 judgment for $207,250.40; and (3) the May 13, 2013 judgment for $8,648.00. The purpose of all three judgments was to direct Bowers to reimburse ClearOne for attorneys' fees and costs expended in connection with the civil contempt proceedings and related appeal. All three of the judgments are now final and, according to the record on appeal, remain unpaid.[2]

Moreover, we conclude that this special condition of supervised release otherwise satisfies the requirements of 18 U.S.C. § 3583(d). To begin with, the special condition is reasonably related to the nature and circumstances of Bowers' offenses of conviction because it seeks to remedy the expenses that were incurred by ClearOne as a direct result

---

[2] ClearOne's CEO, Zee Hakimoglu, appeared at the sentencing proceeding and gave a statement to the district court. In particular, Hakimoglu stated that Bowers had not returned the Honeybee Code to ClearOne and had not paid "a penny" to ClearOne on the outstanding judgments. ROA, Vol. 8 at 1080.

of Bowers' contemptuous conduct. It is also reasonably related to Bowers' history and characteristics because the monthly amount directed to be paid was specifically tied to Bowers' financial circumstances. And, we note, it effectively affords the probation officer with discretion to review that amount as necessary. Further, the special condition does not impose any deprivation of liberty upon Bowers because it simply requires him to make payments on already existing legal obligations. See United States v. Mitchell, 429 F.3d 952, 952–53 (10th Cir. 2005) ("[B]ecause Ms. Mitchell was already legally obligated to pay the restitution from her previous convictions, the challenged condition of supervised release" requiring her to remain current on her restitution payments "is not a 'deprivation of liberty.'"). Lastly, there is no assertion by Bowers that the special condition is inconsistent with any pertinent policy statements issued by the United States Sentencing Commission.

In sum, we conclude that the district court did not abuse its discretion in requiring Bowers, as a special condition of supervised release, to pay a set minimum monthly amount towards the judgments entered against him and in favor of ClearOne in the underlying civil action.

*Denial of motion to disclose the criminal referral*

In his second issue on appeal, Bowers challenges the district court's denial of his motion to disclose the criminal referral. We review for abuse of discretion the denial of a motion for discovery in a criminal case. United States v. Apperson, 441 F.3d 1162, 1191 (10th Cir. 2006).

21

After examining the record on appeal, including the criminal referral filed under seal, we conclude that the district court did not abuse its discretion in denying Bowers' motion to disclose the criminal referral. To begin with, nothing in the criminal referral rendered it discoverable under Federal Rule of Criminal Procedure 16. More specifically, the criminal referral did not include oral or written statements made by Bowers, reports of examinations or tests, or any expert witness testimony or opinions. Fed. R. Crim. P. 16(A), (B), (F), (G). Further, nothing therein was "material to preparing the defense," used in the government's case-in-chief, or "obtained from or belong[ed] to" Bowers. Fed. R. Crim. P. 16(E).

Nor did Brady v. Maryland, 373 U.S. 83 (1963) (requiring prosecution to disclose material exculpatory evidence to the defendant), or Giglio v. United States, 405 U.S. 150 (1972) (holding that prosecution is obligated to disclose information bearing on a witness's credibility where that evidence may be material to the defendant's guilt or punishment) require disclosure of any part of the criminal referral. That is because nothing in the referral was exculpatory in nature, nor did anything therein concern the credibility of any witness who appeared at trial.

Finally, the Jencks Act, 18 U.S.C. § 3500, which requires the government to disclose to criminal defendants any statement made by a government witness that is in the possession of the United States once that witnesses has testified, is inapplicable. That is because the criminal referral contained only information from the district court judge who presided over the civil proceedings, and that judge did not testify as a witness at Bowers'

22

criminal trial.

In sum, nothing in the criminal referral rendered it discoverable by Bowers.

*Legality of his sentence*

In his appellate reply brief, Bowers argues for the first time that his fifteen-month term of imprisonment is "illegal" under 18 U.S.C. § 402. Aplt. Reply Br. at 3. Where, as here, "an appellant raises an issue for the first time in his reply brief, we generally deem it waived." United States v. Henry, 839 F.3d 1271, 1275 n.1 (10th Cir. 2016); But see United States v. Courtney, 816 F.3d 681, 684 (10th Cir. 2016) ("[W]hen an error is obvious enough and satisfies Rule 52(b), an appellate court, in its discretion, may recognize the error notwithstanding briefing deficiencies.").

Even if we were to exercise our discretion and review the issue under the plain error standard, it is clear that Bowers is not entitled to relief. As we have noted, Bowers was charged with and convicted of violating 18 U.S.C. § 401(3). That statute provides:

> A court of the United States shall have the power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as—
> * * *
> (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

Id. As the Seventh Circuit recently noted, one of the "unusual feature[s]" of § 401 is that it "carries no statutorily authorized maximum punishment." United States v. Trudeau, 812 F.3d 578, 585 (7th Cir. 2016) (affirming ten-year term of imprisonment imposed for conviction under § 401(3)); see United States v. Halliday, 665 F.3d 1219, 1226 (10th Cir.

23

2011) (affirming ten-month term of imprisonment imposed for criminal contempt conviction under § 401 arising out of defendant's refusal to testify before a grand jury); United States v. Voss, 82 F.3d 1521, 1527–28 (10th Cir. 1996) (affirming sentences ranging from twelve to twenty-four months' imprisonment imposed on three defendants convicted of violating § 401(3) for refusing to produce subpoenaed documents). Notably, the revised presentence report (PSR) in this case properly advised Bowers of this fact and Bowers made no objection to the revised PSR. See ROA, Vol. 7 at 844 (stating that "18 U.S.C. § 401(3) does not contain a statutory maximum penalty").

The statute that Bowers now cites in his appellate reply brief, § 402, is entitled "Contempts constituting crimes" and provides, in pertinent part:

> Any person, corporation or association willfully disobeying any lawful writ, process, order, rule, decree, or command of any district court of the United States or any court of the District of Columbia, by doing any act or thing therein, or thereby forbidden, if the act or thing so done be of such character as to constitute also a criminal offense under any statute of the United States or under the laws of any State in which the act was committed, shall be prosecuted for such contempt as provided in section 3691 of this title and shall be punished by a fine under this title or imprisonment, or both.

> Such fine shall be paid to the United States or to the complainant or other party injured by the act constituting the contempt, or may, where more than one is so damaged, be divided or apportioned among them as the court may direct, but in no case shall the fine to be paid to the United States exceed, in case the accused is a natural person, the sum of $1,000, nor shall such imprisonment exceed the term of six months.

> This section shall not be construed to relate to contempts committed in the presence of the court, or so near thereto as to obstruct the administration of justice, nor to contempts committed in disobedience of any lawful writ, process, order, rule, decree, or command entered in any suit or action brought or prosecuted in the name of, or on behalf of, the United States, but

24

the same, and all other cases of contempt not specifically embraced in this section may be punished in conformity to the prevailing usages at law.

18 U.S.C. § 402.

Bowers argues that § 402 "proscribes the penalties for contempts" and thus prohibited the district court in this case from sentencing him to a term of imprisonment greater than six months. Aplt. Reply Br. at 5. We disagree. By its plain language, § 402 governs only those acts of contempt that are "of such character as to constitute also a criminal offense under any statute of the United States or under the laws of any State in which the act was committed." 18 U.S.C. § 402. This point is confirmed by the very last line of the statute, which states that "all other cases of contempt not specifically embraced in this section may be punished in conformity to the prevailing usages at law." Id.

Bowers was not charged with or convicted of violating § 402, and there is no allegation that the acts of disobedience that he committed were "of such character as to constitute also a criminal offense under any statute of the United States or under the laws of any State." Id. Instead, Bowers was charged with and convicted of violating § 401(3). All of which means that the penalty provisions of § 402 are inapplicable to Bowers' case, and the district court was not otherwise bound by any statutory maximum sentence.

IV

The judgment of the district court is AFFIRMED.

25